Nicholas A. Brown (SBN 198210)
   brownn@gtlaw.com
Vera Ranieri (SBN 271594)
   ranieriv@gtlaw.com
**GREENBERG TRAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

*Counsel for Movant*
*Electronic Frontier Foundation*

☐ ORIGINAL

RS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

PERSONAL AUDIO, LLC

            Plaintiff,

    v.

TOGI ENTERTAINMENT, INC. et al.

            Defendant

CV 14 80 025 MISC

Miscellaneous Action No.

[Action pending in the United States
District Court for the Eastern District of
Texas, Case No. 2:13-cv-13]

**THIRD PARTY ELECTRONIC
FRONTIER FOUNDATION'S
NOTICE OF MOTION AND MOTION
TO QUASH AND FOR PROTECTIVE
ORDER**

Date: Thursday, Mar. 6, 2014
Time: 1:30 p.m.
Dept.: Courtroom 3, 17th Floor
Judge: Honorable Richard Seeborg

Motion to Quash and
Motion for Protective Order

Case No. _____

1

# TABLE OF CONTENTS

2  NOTICE OF MOTION ............................................................................................................... 1

3  MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

4  I.  INTRODUCTION ............................................................................................................. 2

5  II.  STATEMENT OF FACTS ................................................................................................ 3

6
   A.  EFF is a member-supported, nonprofit organization advocating for the
7      public interest. ....................................................................................................... 3

8      B.  Pursuant to its mission to defend the public interest, EFF has challenged
          Personal Audio's patent in an administrative proceeding before the PTO ............. 3
9

10     C.  Personal Audio has sued numerous other parties in the Eastern District of
          Texas. ..................................................................................................................... 4

11     D.  Seeking information for use in the PTO Action, Personal Audio served
12        EFF with a third-party subpoena captioned in the Texas Case. ............................ 4

13 III.  ARGUMENT ..................................................................................................................... 6

14     A.  Personal Audio's subpoena is an improper end-run around the strict
          discovery limits that apply during inter partes review. ......................................... 6
15
16     B.  Personal Audio seeks information irrelevant to the Texas Case. ............................ 8

17     C.  Enforcing the subpoena would burden EFF and its supporters' First
          Amendment rights of association. .......................................................................... 8
18
19        i.  Personal Audio's subpoena calls for information protected from
              disclosure by the First Amendment. .......................................................... 10

20        ii.  Personal Audio cannot satisfy the enhanced relevance standard for
21            material protected by the First Amendment privilege. ............................... 13

22     D.  The Subpoena impermissibly requires disclosure of attorney- client
          communications and attorney work product. ........................................................ 15
23
       E.  Personal Audio's subpoena improperly calls for unretained expert opinion ......... 19
24
   IV.  CONCLUSION ............................................................................................................... 20
25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3 *Abbott Labs. v. Cordis Corp.*,
710 F.3d 1318 (Fed. Cir. 2013) .............................................................................................18

4

5 *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*,
333 F.3d 168 (D.C. Cir. 2003).................................................................................................10

6 *Apple Inc. v. Achates Reference Pub., Inc.*,
7 Case IPR2013-00080; -00081, 2013 WL 6514049 (PTAB March 8, 2013).............................7

8 *Beinin v. Ctr. for Study of Popular Culture*,
C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007) ..................................10, 11, 13
9

*Brock v. Local 375, Plumbers Int'l Union of Am.*,
10 860 F.2d 346 (9th Cir. 1988) ...................................................................................................9

11 *Cusumano v. Microsoft Corp.*,
12 162 F.3d 708 (1st Cir. 1998).....................................................................................................14

13 *Dole v. Serv. Employees Union, AFL-CIO, Local 280*,
950 F.2d 1456 (9th Cir. 1991) ..................................................................................................13

14 *DR Systems, Inc. v. Eastman Kodak Co.*,
15 No. 09cv1625–H, 2009 WL 2982821 (S.D. Cal. Sept. 14, 2009)...........................................19

16 *Eilers v. Palmer*,
17 575 F. Supp. 1259 (D. Minn. 1984).........................................................................................11

18 *Fausto v. Credigy Servs. Corp.*,
No. C07-05658, 2008 WL 4793467 (N.D. Cal., Nov. 3, 2008) ...............................................17
19

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
20 Case IPR2012-00001, 2013 WL 2023626 (PTAB Mar. 5, 2012) .........................................6, 7

21 Graff v. Hunt & Henriques,
No. C08-0908, 2008 WL 2854517 (N.D. Cal., July 23, 2008) ................................................17
22

*Hickman v. Taylor*,
23 329 U.S. 495 (1947) ..........................................................................................................16, 18

24 *Hynix Semiconductor Inc. v. Rambus Inc.*,
25 No. C-00-20905 RMW, 2009 WL 230039 (N.D. Cal. Jan. 27, 2009) ...................................19

26 *In re Rail Freight Fuel Surcharge Antitrust Litig.*,
268 F.R.D. 114 (D.D.C. 2010) ................................................................................................18
27

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
28 268 F.R.D. 114 (D.D.C. 2010) ................................................................................................15

*In re Spalding Sports Worldwide, Inc.,*
    203 F.3d 800 (Fed. Cir. 2000) ............................................................................................. 15

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & Its Locals
    1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.,*
    590 F.2d 1139 (D.C. Cir. 1978)............................................................................................ 11

*Microsoft Corp. v. Proxyconn, Inc.,*
    Case IPR2012-00026, -00109, 2013 WL 6327751 (PTAB March 8, 2013) ............................. 7

*NAACP v. Alabama,*
    357 U.S. 449 (1958) ............................................................................................... 9, 10, 13

*NAACP v. Button,*
    371 U.S. 415 (1963) ................................................................................................................ 9

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2009) ......................................................................... 2, 9, 10, 12, 13

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ................................................................................................................ 9

*S.E.C. v. Jasper,*
    No. C07-06122 JW (HRL), 2009 WL 1457755 (N.D. Cal. May 26, 2009) ............................ 17

*Shelton v. American Motors Corp.,*
    805 F.2d 1323 (8th Cir. 1986) ............................................................................................. 17

*Smith & Nephew v. Convatec,*
    Case IPR2013-00102, 2013 WL 5970195 (PTAB August 21, 2013) ...................................... 7

*Synopsis, Inc. v. Mentor Graphics Corp.,*
    Case IPR2012-00042, 2013 WL 6327757 (PTAB April 25, 2013) .......................................... 7

*United States v. Am. Tel. & Tel. Co.,*
    86 F.R.D. 603 (D.D.C. 1979) ............................................................................................... 18

*United States v. Santiago-Lugo,*
    904 F. Supp. 43 (D.P.R. 1995) ............................................................................................... 8

*Wyoming v. U.S. Dept. of Ag.,*
    208 F.R.D. 449 (D.D.C. 2002) ........................................................................................ 12, 14

**Statutes**

35 U.S.C. § 311 ........................................................................................................................ 6

35 U.S.C. § 316(a)(11) .............................................................................................................. 6

35 U.S.C. § 316(a)(5) ............................................................................................................. 6, 7

1

**Rules**

2

Fed. R. Civ. P 45(d)(3)(A)–(B) ....................................................................................................5

3

Fed. R. Civ. P. 45........................................................................................................................1

4

Fed. R. Civ. P. 45(d)(3)(A)(iii)..................................................................................................19

5

Fed. R. Civ. P. 45(d)(3)(B)(ii) ..................................................................................................19

6

N.D. Cal. L.R. 37-1 .....................................................................................................................3

7

**Regulations**

8

37 C.F.R. §§ 42.51-53 ..................................................................................................................6

9

**Other Authorities**

10

154 Cong. Rec. S9988-89 (daily ed. Sept. 27, 2008) ....................................................................6

11

H. Rep. No. 112-98 (2011)............................................................................................................6

12

Mike Masnik, *Lodsys Sues App Developer For Patent Infringement Because He Called
13  Them A Patent Troll*, Techdirt (July 8, 2013),
    https://www.techdirt.com/articles/20130703/13584123713/lodsys-sues-app-
14  developer-patent-infringement-because-he-called-them-patent-troll.shtml ............................11

15

Restatement (Third) of the Law Governing Lawyers § 87 cmt. h (2000) ......................................16

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

## NOTICE OF MOTION

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE THAT on Thursday, March 6, 2014 at 1:30pm, in the

4 courtroom of the Honorable Judge Richard Seeborg, Courtroom 3, 17th floor, 450 Golden Gate

5 Avenue, San Francisco, CA, or as soon thereafter as this case may be heard, Electronic Frontier

6 Foundation ("EFF") hereby moves pursuant to Federal Rule of Civil Procedure 45 to quash the

7 deposition subpoena served by Personal Audio, LLC ("Personal Audio") in a case pending in

8 federal court in the Eastern District of Texas, Case No. 2:13-cv-00013-JRG-RSP (the "Texas

9 Case"), and for a protective order.

10      EFF's motion is based upon this notice of motion, the following memorandum of points

11 and authorities, the accompanying declarations of Daniel K. Nazer ("Nazer Decl.") and Vera

12 Ranieri ("Ranieri Decl.") and any associated exhibits, any reply filed in support of this motion,

13 all other papers filed and proceedings had in this action, oral argument of counsel, and such other

14 matters as the Court may consider.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The subpoena at issue here is an obvious attempt to game the system. Unwilling or unable to meet the requirements for discovery in an administrative proceeding now pending at the United States Patent and Trademark Office (the "PTO Action"), Personal Audio is using an entirely separate litigation in a Texas federal court as an excuse to do what the PTO would never permit.

Personal Audio's motives are not a matter of speculation. Counsel for Personal Audio admitted that it is seeking information for use in the PTO Action, as well as another lawsuit now pending in Massachusetts. That admission was perplexing, as the terms of the protective order in the Texas case plainly prohibit Personal Audio from using discovery conducted in that case in any other proceeding. In any event, the admission demonstrates, if such demonstration were necessary, that Personal Audio's subpoena was not issued in good faith.

What is worse, Personal Audio's subpoena seeks information that is clearly privileged under the First Amendment. EFF is a nonprofit digital civil liberties and legal aid organization that engages in First Amendment protected litigation, speech, organizing, advocacy, and publishing. Personal Audio's demand for donor information, internal communication, and communications with supporters, strikes at the core of EFF's First Amendment protected activities. *See Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009). To gain access to information protected by First Amendment privilege, Personal Audio must meet a more demanding standard than mere relevance. *Id.* at 1161. Personal Audio has not and cannot make that showing.

The subpoena is also overbroad: it seeks privileged attorney-client communications and work product, not to mention unretained expert testimony in the form of EFF's expert opinion on issues in the Texas Case.

---

Motion to Quash and                                   2                   Case No. _____
Motion for Protective Order

**1**  In short, the subpoena is fundamentally improper, and must be quashed in its entirety.[1]

**2**  ## II.  STATEMENT OF FACTS

**3**  ### A.  EFF is a member-supported, nonprofit organization advocating for the public interest.

**4**  The Electronic Frontier Foundation is a nonprofit organization that advocates for the

**5**  rights of digital consumers and innovators. Nazer Decl. ¶ 6. With more than 28,000 dues-paying

**6**  members, EFF represents the interests of technology users in litigation and in broader policy

**7**  debates surrounding the application of law in the digital age. *Id.* ¶¶ 6-7. Its activities include

**8**  impact litigation, public advocacy and education, and the design of new technologies to help

**9**  individuals protect their privacy. *Id.* ¶ 7. EFF also offers pre-litigation counseling and helps

**10**  individuals and businesses find other legal services. *Id.*

**11**  A significant part of EFF's work involves protecting the public interest in ensuring that

**12**  intellectual property rights promote, and do not unfairly inhibit, new creativity and innovation.

**13**  As part of that work, EFF has filed a number of petitions for ex parte reexamination at the Patent

**14**  and Trademark Office, challenging patents it believed to be both invalid and a threat to the

**15**  public interest. *Id.* ¶ 8. EFF has made a number of preissuance third-party submissions

**16**  challenging pending patent applications. *Id.* EFF is also actively supporting legislative reform of

**17**  the patent system, targeting in particular the problem of lawsuits by non-practicing entities.

**18**  *Id.* ¶ 9. For example, EFF Staff Attorney Julie Samuels recently testified before the U.S. Senate

**19**  Committee on Commerce, Science, and Transportation regarding patent reform. *Id.* And EFF has

**20**  urged its supporters to contact members of Congress to support the reform of the patent system.

**21**  *Id.* As a result of this work, EFF is sometimes contacted by individuals who have been targeted

**22**  in patent infringement lawsuits and seek legal advice and assistance. *Id.* ¶ 10.

**23**  ### B.  Pursuant to its mission to defend the public interest, EFF has challenged Personal Audio's patent in an administrative proceeding before the PTO.

**24**  In February, 2013, EFF learned that Personal Audio was claiming to own a patent that

**25**  covered "podcasting"[2] and was sending letters to numerous podcasters demanding that they take

**26**

**27**  ---

[1] Pursuant to Local Rule 37-1, counsel for EFF met and conferred with counsel for Personal

**28**  Audio prior to the filing of this motion. Ranieri Decl., ¶¶ 5, 12; Ex. 6 at 1. The parties were unable to reach agreement regarding the scope of the subpoena. *Id.*

1    a license to Personal Audio's patent, U.S. Patent No. 8,112,504 (the "'504 patent"). *Id.* ¶ 12. EFF

2    decided, as part of its mission to defend the public interest, that it would challenge the validity of

3    the '504 patent at the PTO by filing a petition for inter partes review on its own behalf. *Id.* ¶ 13.

4    In May 2013, EFF put out a public call for support in raising funds for the application fees

5    associated with such a challenge and for the public to help identify relevant prior art. *Id.* ¶ 15.

6    Over one thousand members of the public donated to EFF's "Save Podcasting" campaign, which

7    raised approximately $78,885 dollars. *Id.* ¶ 16. No contributors were involved in any planning,

8    drafting, or filing of EFF's proposed challenge to the '504 patent. *Id.* ¶ 20. On October 16, 2013,

9    EFF filed its petition for inter partes review at the PTO ("PTO Action"). *Id.* ¶ 21. Greenberg

10   Traurig, LLP is counsel of record for EFF in that proceeding. *Id.*

11          **C.     Personal Audio has sued numerous other parties in the Eastern District of
                     Texas.**

12          Apart from the PTO Action, at least two judicial actions relating to the '504 patent are

13   currently pending in federal court. Personal Audio has sued several parties in the Eastern District

14   of Texas in *Personal Audio LLC v. Togi Entm't, Inc. et al.*, Case No. 2:13-cv-13 (E.D. Tex.) (the

15   "Texas Case"), and the parties are currently engaged in claim construction proceedings. *See*

16   Scheduling Order, Texas Case, Ranieri Decl. Ex. 1. Fox Networks Group, Inc. and Fox

17   Broadcasting Company also filed a declaratory judgment against Personal Audio in the United

18   States Court of the District of Massachusetts that seeks a declaration of non-infringement of the

19   '504 patent. *See Fox Networks Group, Inc. et al. v. Personal Audio LLC*, Case No. 1:13-cv-

20   11794-MLW (D. Mass.) (the "Massachusetts Case"). EFF is not a party to either the Texas Case

21   or Massachusetts Case. Nazer Decl. ¶ 22. No party involved in the Texas Case or the

22   Massachusetts Case, other than Personal Audio, is involved in the PTO Action. *Id.*

23          **D.     Seeking information for use in the PTO Action, Personal Audio served,
                     withdrew, and then re-served EFF with a third-party subpoena captioned in
24                   the Texas Case.**

25          Late in the afternoon on Friday, December 20, Personal Audio served EFF with a

26   deposition subpoena. This first subpoena sought testimony about the '504 patent and the PTO

27

28   [2] A "podcast" is an audio or video file, similar to a radio broadcast, that is downloaded from the
     Internet.

1  Action including: (i) any communications between EFF and any "potential or actual defendant"
2  in any civil case brought by Personal Audio, including any persons to whom Personal Audio sent
3  a demand letter (Topic 1); (ii) any communications with potential or actual "witnesses" and any
4  third parties regarding the '504 patent (Topics 2 and 3); (iii) any information regarding prior art
5  to the '504 patent, whether or not involved in the PTO Action, including the identification of the
6  prior art and circumstances surrounding its publication (Topics 4, 7 and 8); (iv) any analyses of
7  the '504 patent, including its claims and construction of terms (Topic 8); (v) all fundraising
8  activities relating to the PTO Action (Topic 5); and finally (vi) all "steps taken in order for the
9  EFF to be 'fully prepared' to take on Personal Audio." (Topic 6). Nazer Decl. ¶ 3 & Ex. A.

10  In light of the holidays, an attorney representing EFF, Vera Ranieri, contacted Personal
11  Audio to request an extension of time to respond to the subpoena. Ranieri Decl. ¶ 2. Counsel for
12  Personal Audio explained that it could only grant a short extension because it hoped to use the
13  information sought in the subpoena in the PTO Action and at an upcoming hearing in the
14  Massachusetts Case. *Id.* ¶ 3.

15  In correspondence with counsel for Personal Audio, counsel representing EFF explained
16  that EFF objected to the first subpoena on multiple grounds and intended to move to quash.
17  Ranieri Decl. *See, e.g.*, Ex. 6 at 2, 5. For example, EFF wrote that the subpoena improperly
18  demanded information irrelevant to the Texas case, attorney work product, material protected by
19  attorney-client privilege, and information protected by the First Amendment privilege. *Id.* at 5.

20  On the morning of January 18, 2014, counsel for Personal Audio sent an email stating:
21  "We hereby withdraw our subpoena. We reserve the right to serve a modified subpoena in the
22  future." *Id.* at 1-2. The next day, late in the afternoon on Friday January 17, 2014, Personal
23  Audio served a second subpoena on EFF. Nazer Decl. ¶ 5, Ex. B. As before, the subpoena
24  commands EFF to appear at a deposition in San Francisco. *Id.* Personal Audio's second
25  subpoena was also captioned in the same Texas Case[3] and, with some minor edits, listed the

26

27  [3] Although it was captioned in the Texas Case, the first subpoena was issued out of the Northern
    District of California. Personal Audio's second subpoena was issued from the Eastern District of
28  Texas, which is the district court where the action is pending. This Court has the authority to
    quash the subpoena, regardless of where it was issued. *See* Fed. R. Civ. P 45(d)(3)(A)–(B).

1    same eight deposition topics. Although Personal Audio purported to narrow Topics 4 and 8 by

2    limiting its demand to "any non-privileged" information, it did not place that restriction on the

3    much broader Topic 6 (which seeks testimony regarding all "steps taken in order for the EFF to

4    be 'fully prepared' to take on Personal Audio with respect to the '504 patent"). *See* Nazer Decl.

5    Exs. A at 4 & B at 4. Personal Audio's second subpoena (hereafter, "Subpoena") is the subject of

6    this motion to quash. *See* Nazer Decl. Ex. B.

7    **III. ARGUMENT**

8        **A.**    **Personal Audio's subpoena is an improper end-run around the strict discovery limits that apply during inter partes review.**

9       Personal Audio's admitted attempt to depose EFF in order to use that information in the

10    PTO Action is an impermissible end-run around the statutory scheme that governs the inter

11    partes review procedure (not to mention the discovery regime that governs the Texas Case). Inter

12    partes review—a relatively new procedure created by the America Invents Act of 2011—is an

13    adversarial administrative procedure to challenge the validity of patents before the Patent Trial

14    and Appeal Board ("PTAB") within the PTO. *See* 35 U.S.C. § 311 *et seq.* Any party wishing to

15    challenge the validity of a patent, whether or not it has been threatened with an infringement

16    action, may file a petition for inter partes review. *Id.*

17       Congress intended for inter partes review to be a quick and cost-effective alternative to

18    litigation. *See* H. Rep. No. 112-98 at 45-48 (2011). Accordingly, inter partes review proceeds

19    according to a strict timeline and the scope of discovery is much narrower than in patent

20    litigation in district court. *See* 35 U.S.C. § 316(a)(11); 35 U.S.C. § 316(a)(5); 37 C.F.R.

21    §§ 42.51-53; *see also* H. Rep. No. 112-98 at 47; 154 Cong. Rec. S9988-89 (daily ed. Sept. 27,

22    2008) (statement of Sen. Kyl) (discovery during inter partes review will be confined to

23    "particular limited situations, such as minor discovery that PTO finds to be routinely useful, or to

24    discovery that is justified by the special circumstances of the case."). During an inter partes

25    review, discovery is only available "for the deposition of witnesses submitting affidavits or

26    declarations and for 'what is otherwise necessary in the interest of justice'." *Garmin Int'l, Inc. v.*

27    *Cuozzo Speed Techs. LLC*, Case IPR2012-00001, 2013 WL 2023626, at *3 (PTAB Mar. 5, 2012)

28

**1**  (quoting 35 U.S.C. § 316(a)(5)). "That is significantly different from the scope of discovery

**2**  generally available under the Federal Rules of Civil Procedure." *Id.*

**3**  As the above suggests, a party can obtain additional discovery if it can show that

**4**  discovery is necessary "in the interest of justice." 35 U.S.C. § 316(a)(5). Mindful of Congress'

**5**  purpose, however, the PTAB has stated that it "will be conservative in authorizing" such

**6**  discovery. *Apple Inc. v. Achates Reference Pub., Inc.*, Case IPR2013-00080; -00081, 2013 WL

**7**  6514049, at *2 (PTAB March 8, 2013); *see also Smith & Nephew v. Convatec*, Case IPR2013-

**8**  00102, 2013 WL 5970195, at * 2 (PTAB August 21, 2013); *Microsoft Corp. v. Proxyconn, Inc.*,

**9**  Case IPR2012-00026; -00109, 2013 WL 6327751, at *2 (PTAB March 8, 2013).

**10**  As a matter of procedure, it is premature for Personal Audio to make such a request. If it

**11**  chooses to do so, however, it is very likely to lose. The PTAB has rejected many discovery

**12**  requests similar to the one at issue here. In *Garmin*, the PTO made clear that "[a]sking for the

**13**  other party's litigation positions and the underlying basis for those positions *is not necessary in*

**14**  *the interest of justice*." *Id.* at 6 (emphasis added). For that reason, the PTO denied the patent

**15**  owner's request for testimony relating to what the petitioner intended to argue at trial, including

**16**  testimony related to asserted prior art. *Garmin*, at 13 & 16 (denying a request for documents the

**17**  petitioner intended to rely on at trial and the corresponding deposition regarding the same,

**18**  holding that "Garmin is not obligated to keep [the patent holder] informed of its positions on

**19**  substantive issues before Garmin is ready to present them in this review."). Several of the

**20**  Topics, including Topics 3, 4, 6, 7 and 8, are attempts to elicit EFF's litigation positions, and

**21**  would thus be improper discovery requests during an inter partes review. Similarly, the PTAB

**22**  has set a very high bar for discovery requests seeking information about whether other parties

**23**  might be a real party-in-interest. *See Apple Inc. v. Achates Reference Pub., Inc.,* 2013 WL

**24**  6514049 at *2–4 (denying such a request); *Synopsis, Inc. v. Mentor Graphics Corp.*, Case

**25**  IPR2012-00042, 2013 WL 6327757, at *2–4 (PTAB April 25, 2013) (same). Discovery pursuant

**26**  to Topic 5 of the subpoena would similarly be rejected by the PTAB.

**27**  Personal Audio may believe that some or even all of its discovery requests would

**28**  nonetheless pass muster under the PTAB's strict standards. If so, that is an argument it should

Motion to Quash and                              7                    Case No. _____
Motion for Protective Order

1     make to *the PTAB*. It should not be allowed to use the fact that it has concurrent litigation to

2     avoid the standards applied by the PTAB and receive discovery to which it is not otherwise

3     entitled. *See United States v. Santiago-Lugo*, 904 F. Supp. 43, 47–48 (D.P.R. 1995) (holding that

4     the use of civil subpoenas to discover information for an unrelated case was an improper "fishing

5     expedition" and an abuse of the subpoena power).

6         Simply put, if a patent holder can use district court litigation involving other parties as a

7     forum for extensive discovery from a petitioner in inter partes review, then Congress's decision

8     to limit and streamline discovery—and thereby ensure inter partes review operates as a quick and

9     cost-effective alternative to litigation—will be rendered moot. This Court should reject Personal

10     Audio's attempted end-run around the America Invents Act's carefully established discovery

11     limitations.

12        **B.**      **Personal Audio's subpoena should be quashed because it seeks to use the information for purposes *prohibited* by the protective order in the Texas Case**

13        As noted above, Personal Audio has admitted that it seeks the information collected

14     pursuant to the Subpoena for use in the PTO Action and the Massachusetts Case. *See* Ranieri

15     Decl. ¶ 3. But Personal Audio *cannot* use any testimony received in connection with the

16     subpoena in any action other than the Texas Case. Personal Audio is bound by the protective

17     order in the Texas Case which restricts the use of any information discovered in that case.

18     Specifically, the Protective Order states that "Documents, information or material produced

19     pursuant to *any discovery request* in this Action…*shall be used by the Parties only in the

20     litigation of this Action and shall not be used for any other purpose*." Texas Case, Protective

21     Order, ECF No. 36, at page 4, ¶ 7 (Aug. 23, 2013) (Ranieri Decl. Ex. 5). Yet counsel for

22     Personal Audio has admitted that it is seeking to depose EFF in order to use that information in

23     the PTO Action. Ranieri Decl. ¶¶ 3–4. Personal Audio also stated that it may use information

24     from the deposition in the Massachusetts Case. *Id.* That admission—that Personal Audio seeks to

25     use information for purposes that violate the protective order—is itself a sufficient reason to

26     quash the subpoena.

27        **C.**      **Enforcing the Subpoena would burden EFF and its supporters' First Amendment rights of association.**

28

1    EFF's efforts to invalidate patents it sees as harmful to innovation is one part of its
2    broader political campaign to challenge, and raise awareness about, the abuse of the patent
3    system to inhibit innovation. The First Amendment unquestionably protects the freedom to
4    associate and express political views as a group. "Effective advocacy of both public and private
5    points of view, particularly controversial ones, is undeniably enhanced by group association[.]"
6    *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). "[I]mplicit in the right to engage in activities
7    protected by the First Amendment [is] a corresponding right to associate with others in pursuit of
8    a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v.*
9    *U.S. Jaycees*, 468 U.S. 609, 622 (1984). "Thus, '[t]he First Amendment protects political
10   association as well as political expression,' and the 'freedom to associate with others for the
11   common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth
12   Amendments.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2009) (citations
13   omitted); *id.* at 1165 (holding that compelling disclosure of internal campaign communications
14   would "would likely have a chilling effect on political association," and ordering entry of a
15   protective order). "[I]t is immaterial whether the beliefs sought to be advanced by association
16   pertain to political, economic, religious or cultural matters . . . ." *NAACP*, 357 U.S. at 460.
17   Furthermore, support of litigation is a form of expression and association protected by the First
18   Amendment. *NAACP v. Button*, 371 U.S. 415, 428–29 (1963).

19       "A party who objects to a discovery request as an infringement of the party's First
20   Amendment rights is in essence asserting a First Amendment *privilege*." *Perry*, 591 F.3d at
21   1160. A claim of First Amendment privilege is subject to a two-part analysis. First, "[t]he party
22   asserting the privilege 'must demonstrate . . . a 'prima facie showing of arguable first amendment
23   infringement'" by demonstrating that discovery would "'result in (1) harassment, membership
24   withdrawal, or discouragement of new members, or (2) other consequences which objectively
25   suggest an impact on, or 'chilling' of, the members' associational rights.'" *Id.* (quoting *Brock v.*
26   *Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988)). Once this
27   showing has been made, the burden shifts to the party seeking discovery to show that it is *highly*
28   relevant to the claims or defenses in the litigation (a more demanding standard of relevance than

1  that under Rule 26(b)(1)), and carefully tailored to avoid unnecessary interference with protected

2  activities, and otherwise unavailable. *Id.* at 1161. Personal Audio cannot meet that burden.

### i. Personal Audio's Subpoena calls for information protected from disclosure by the First Amendment.

By demanding donor identities, internal communications, and communications with

supporters, the subpoena strikes at the heart of EFF's First Amendment protected associational

activity. The Subpoena's demand (in Topic 5) for the identity of EFF donors is an especially

grave threat to EFF's associational rights.[4] It is well-established that compelled disclosure of

member and donor information burdens First Amendment rights. *NAACP v. Alabama*, 357 U.S.

at 462–63; *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333

F.3d 168, 175 (D.C. Cir. 2003) ("The Supreme Court has long recognized that compelled

disclosure of political affiliations and activities can impose just as substantial a burden on First

Amendment rights as can direct regulation.").

Courts faced with nearly identical discovery requests have found the information sought

to be protected by the First Amendment privilege. In *Beinin v. Ctr. for Study of Popular Culture*,

C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007), for example, a professor sued an

online critic for copyright infringement. The defendant then sought discovery of the names and

email addresses of those who had expressed support for the professor's case. The court explained

the threat this discovery request posed to First Amendment rights:

> Compelled disclosure of the names of individuals or groups supporting a
> plaintiff's lawsuit thus creates a risk of interference with First Amendment-
> protected interests in two ways. First, compelled disclosure might make the
> plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups,
> so that evidence of their support cannot be used against the plaintiff at trial.
> Second, the supporters themselves may desire anonymity, and may withhold
> support if they fear their names will be disclosed.

---

[4] In communications regarding the original subpoena, counsel for Personal Audio claimed a First Amendment privilege cannot apply to the identity of donors because EFF is required to disclose this information to the federal government. *See* Ranieri Decl. Ex. 6. This is simply false. There is no such requirement and EFF has not disclosed, has not been asked to disclose, nor will it disclose, the identity of any of the donors to its Save Podcasting campaign to the government for any purpose. *See* Nazer Decl. ¶ 16.

*See* 2007 WL 1795693, at \*3. In *Eilers v. Palmer*, 575 F. Supp. 1259 (D. Minn. 1984), a member of a religious organization alleged that opponents of the group had kidnapped and attempted to deprogram him. Like Personal Audio, the defendants in that case sought the names of any individuals who provided funding for the plaintiff's lawsuit. Noting that "support of litigation is a form of expression and association protected by the first amendment," the court concluded that such disclosure would chill the exercise of associational rights. *See* 575 F. Supp. at 1261.

For precisely these reasons, Personal Audio's demand for donor information burdens the associational rights of EFF and more than one thousand of its members and supporters. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & Its Locals 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) ("Without doubt, the association itself may assert the right of its members and contributors to withhold their connection with the association."). Approximately 650 donors to EFF's Save Podcasting campaign elected to become members of EFF (or were already members) and approximately 650 individuals supported the campaign without electing to becoming members. Nazer Decl. ¶ 16. As a nonprofit, EFF relies on this kind of donor support for everything it does. *See id.* ¶ 6. EFF has conducted similar fundraising campaigns around other issues. For example, in July 2013, EFF held a membership drive to coincide with a lawsuit it filed challenging mass NSA surveillance. *Id.* ¶ 17.

EFF's ability to raise money from supporters in this way will be severely chilled if its donors fear that their anonymity could be pierced by a subpoena. *Id.* ¶¶ 18–19. This is especially true for an organization that, like EFF, regularly advocates for both associational rights and anonymous speech. *Id.* ¶ 18. And supporters of EFF's patent work may fear retaliation from patent holders opposed to these efforts. *See, e.g.*, Mike Masnik, *Lodsys Sues App Developer For Patent Infringement Because He Called Them A Patent Troll*, Techdirt (July 8, 2013).[5] Further, many EFF donors work for corporations with patent policies that are different from, and may even be opposed to, the policies advocated by EFF. Nazer Decl. ¶ 19. Thus, for precisely the

---

[5] Available at https://www.techdirt.com/articles/20130703/13584123713/lodsys-sues-app-developer-patent-infringement-because-he-called-them-patent-troll.shtml.

1  reasons outlined in cases such as *Beinin* and *Eilers*, Personal Audio's subpoena impermissibly
2  interferes with EFF and its supporters' First Amendment protected interests.

3      Personal Audio's subpoenas also demand disclosure of documents, information, and
4  communications reflecting EFF's internal strategy and analysis regarding the '504 patent. Topics
5  4, 6–8 all seek internal EFF communications regarding its preparation for filing the PTO Action.
6  Discovery of this work product is impermissible because it would make EFF's staff more
7  hesitant to frankly express their ideas and severely chill EFF's internal communications. Nazer
8  Decl. ¶¶ 25–27.[6] Disclosure of these internal communications would thereby also burden EFF's
9  First Amendment rights. *Perry*, 591 F.3d at 1162-63 ("Implicit in the right to associate with
10  others to advance one's shared political beliefs is the right to exchange ideas and formulate
11  strategy and messages, and to do so in private."); *see also Wyoming v. U.S. Dept. of Ag.*, 208
12  F.R.D. 449, 454 (D.D.C. 2002) (disclosure of internal communications "would have a potential
13  'for chilling the free exercise of political speech and association guarded by the First
14  Amendment'").

15      EFF's communications and associations with its supporters are similarly protected by the
16  First Amendment. The First Amendment's protection "extends not only to the organization itself,
17  but also to its staff, members, contributors, and others who affiliate with it." *Int'l Union v. Nat'l*
18  *Right to Work Legal Defense and Ed. Found., Inc.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978); *see*
19  *also Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 454–55 (D.D.C. 2002) (quashing
20  subpoenas seeking documents exchanged between groups advocating protection of the
21  environment because the requests would violate the groups' First Amendment rights of
22  association). Topic 3 of the subpoena demands, without any limitation, "all communications"
23  with third parties concerning the '504 patent. But EFF's communications with supporters are
24  integral to its association with other like-minded individuals and groups, and to the sources of
25  information and support for its advocacy work. Nazer Decl. ¶ 28. "One of the purposes inherent

26

27     [6] As is discussed in Sections III.D. and III.E., *infra*, this information is also protected by the
28  attorney-client privilege or the work-product privilege, and is an improper request for unretained
expert testimony.

1  in the right of association is to encourage like-minded individuals to discuss issues of common

2  importance." *Beinin*, 2007 WL 1795693, at *4 (holding that revealing names of those who sent

3  private messages of support to a litigant violated the First Amendment because "[h]ad Plaintiff's

4  email correspondents realized that privately supporting his litigation would potentially subject

5  them to intrusive depositions or other discovery, they may have chosen to refrain from

6  speaking.").

7          ii.     **Personal Audio cannot satisfy the enhanced relevance standard for material protected by the First Amendment privilege.**

8      As set forth above, EFF's associations, both internal and with like-minded supporters,

9  would be chilled and infringed by Personal Audio's Subpoena. *See Perry*, 591 F.3d at 1163

10 (declarations established prima facie case of infringement); *Dole v. Serv. Employees Union,*

11 *AFL-CIO, Local 280*, 950 F.2d 1456, 1459–61 (9th Cir. 1991) (same). Therefore, in order to

12 justify discovery, Personal Audio must show that the information sought is both highly relevant

13 and unavailable from other sources, and that its requests are "carefully tailored to avoid

14 unnecessary interference with protected activities[.]" *Perry*, 591 F.3d at 1161. In sum, the

15 question is "whether the party seeking the discovery 'has demonstrated an interest in obtaining

16 the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free

17 exercise . . . of [the] constitutionally protected right of association.'" *Id.* (quoting *NAACP*, 357

18 U.S. at 463).

19     Personal Audio cannot satisfy this heightened burden. In fact, most of its requests are not

20 even relevant to the Texas Case at all. Personal Audio seeks broad categories of testimony

21 relating to parties and matters that have no bearing on the issues in the Texas Case.[7] In the Texas

22 Case, Personal Audio has asserted infringement of the '504 patent against the defendants. *See,*

23 *e.g.*, Compl., ECF No. 1, Texas Case, at ¶¶ 7–9 (Ranieri Decl. Ex. 3). The defendants have

24 asserted various defenses, including non-infringement and invalidity. *See, e.g.*, Togi Answer,

25

26 [7] Indeed, Personal Audio made no attempt to limit its subpoena to information potentially

27 relevant to the Texas Case. This is most clearly revealed in the Subpoena's absurd and abusively overbroad definition of "defendant." The Subpoena defines "defendant" as "any *potential* or

28 actual Defendants in *any civil case* regarding the '504 patent." Nazer Decl. B at 1 (emphasis added).

1    ECF No. 5, Texas Case, at 3 (Ranieri Decl. Ex. 4). With respect to Topics 1–4, EFF

2    communications with parties other than the named defendants in the Texas Case are not relevant

3    to either Personal Audio's claims of infringement against those defendants, or Personal Audio's

4    defenses against assertions of invalidity or unenforceability brought by those defendants. EFF

5    contends the '504 patent to be invalid, but that is immaterial to the Texas Case since EFF is not a

6    party to that action. But, equally important, any attempts to elicit testimony from EFF about the

7    validity or invalidity of the '504 patent would be impermissible attempts to seek privileged or

8    protected information or unretained expert testimony in the inter partes review. *See* Sections

9    III.D. & III.E., *infra*.

10    With respect to Topic 5, the identity of persons contributing to EFF's fundraising to

11    challenge the '504 patent has no relevance to Personal Audio's claims or defenses in the Texas

12    Case. Contributing money to support the costs associated with an administrative filing does not

13    constitute infringement, nor does it relate to invalidity. Topic 6, which seeks testimony as to "all

14    steps taken in order for the EFF to be 'fully prepared' to take on Personal Audio", is untethered

15    to any claims or defenses relating to infringement or invalidity in the Texas Case and is therefore

16    overbroad. For example, this topic presumably includes EFF's search for pro bono counsel. But

17    when and where EFF retained counsel in the inter partes review has no relevance to assertions of

18    infringement or invalidity in Texas or in the PTO Action.[8]

19    And information such as communications between EFF and the named defendants, and

20    whether these defendants donated to EFF's Save Podcasting campaign, in any event could be

21    requested from the defendants themselves. Personal Audio should not burden a non-party such as

22    EFF, particularly given the First Amendment interests involved. *See Cusumano v. Microsoft*

23    *Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-

24    parties is a factor entitled to special weight in evaluating the balance of competing needs");

25    *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002) ("Non-party status is one

26

27    [8] Topics 7 and 8, although facially relevant to issues in the Texas Case, such as claim

28    construction or invalidity, are also impermissible topics for the Subpoena, for reasons discussed in Sections III.D. and III.E., *infra*.

Motion to Quash and          14          Case No. _____
Motion for Protective Order

of the factors the court uses in weighing the burden of imposing discovery."). Moreover, the request is hardly narrowly tailored: it seeks information about over a thousand people with no showing of individual interest. Indeed, in these circumstances, Personal Audio's discovery demands have even less merit than similar requests struck down in *Beinin* and *Eilers*.

**D.    The Subpoena impermissibly requires disclosure of attorney-client communications and attorney work product.**

EFF is a nonprofit charitable organization that employs lawyers, policy analysts, activists, and technologists to bring actions in courts and administrative bodies. Nazer Decl. ¶¶ 6-7. As such, the large part of its activity, and specifically the information sought by Personal Audio, is protected by either the attorney-client privilege or the work product doctrine.

Through the Subpoena, Personal Audio seeks to learn EFF's litigation positions with respect to the '504 patent. For example, Topics 1–3 seek testimony which includes communications with others, including one of EFF's counsel, the Cyberlaw Clinic at the Harvard University Berkman Center for Internet & Society. Ranieri Decl. ¶ 4. Topic 6 seeks testimony regarding "All steps taken in order for the EFF to be 'fully prepared' to take on Personal Audio with respect to the '504 patent." Nazer Decl. Ex. B at 4.

The information sought by Topics 1–8 is information that is privileged and protected by either the attorney-client privilege or the work product doctrine or both. EFF has filed an inter partes review at the PTO challenging Personal Audio's patent and its claim to "own" podcasting. Testimony that would be responsive to Topics 1–8 would concern information generated in anticipation of litigation and that was prepared by in-house counsel at EFF, by EFF's outside counsel, or between EFF and its attorneys. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805–06 (Fed. Cir. 2000). Moreover, some or all of the testimony and material covered by the requests concerns the impressions, opinions, conclusions, legal theories, and research prepared by EFF's attorneys and the EFF itself (by its in-house attorneys or at the direction of its attorneys) for the purpose of filing the PTO Action, i.e., in anticipation of litigation. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117–18 (D.D.C. 2010) (documents prepared in preparation for adversarial administrative proceeding were protected by the work-

product privilege); *see also* Restatement (Third) of the Law Governing Lawyers (Restatement) § 87 cmt. h (2000).

For example, the Subpoena seeks information regarding communications between EFF and others (such as prior artists and any "actual or potential witness"). However, EFF's impressions, thoughts, and memoranda regarding those communications are work product and are thus not discoverable absent a showing that Personal Audio cannot obtain the information from any other source. *See Hickman v. Taylor*, 329 U.S. 495 (1947) (protecting from discovery as work product an attorney's interviews with third parties).

In *Hickman*, the plaintiff sought discovery from its adversary of all oral and written statements its attorneys took from third party witnesses. *Id.* at 498-99. The Supreme Court held that the substance of the interviews could not be sought via the discovery request. As explained in *Hickman*:

> Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness.

329 U.S. at 512–13.

Personal Audio's requests here are no different than those determined to be unacceptable in *Hickman*. Topics 1-8 seek to force EFF to recount all that it recalls regarding what third-parties told it during the course of discussions EFF undertook in order to prepare for litigation.[9] And like in *Hickman*, "the essence of what [the subpoenaing party] seeks either has been revealed to him already … or is readily available to him direct from the witnesses for the asking." *Hickman*, 329 U.S. at 509.

---

[9] For example, Topic 2 requests that EFF describe any communications between EFF and any "actual or potential witness". Topic 1 requests that EFF describe any communications with "Defendants", wherein "Defendant" includes, *inter alia*, "any potential or actual defendant in any civil case regarding the '504 patent" and "any person or entity that has received a licensing letter from Personal Audio concerning the '504 patent". Nazer Decl. Ex. B at 1.

---

Motion to Quash and
Motion for Protective Order

16

Case No. _____

1    As another example, Topic 7 seeks an "Identification of any Information Concerning any

2    prior art … that would tend to show either: (1) the art did not disclose any element of the claims

3    of the '504 patent or (2) the art was not demonstrably available prior to any filing date of the

4    '504 patent." This information is protected by the work-product doctrine and is not discoverable

5    via deposition subpoena.

6    In *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986),[10] an opposing party

7    sought to discover, via deposition of the opposing party's in-house counsel, questions regarding

8    "the existence or nonexistence of various documents" regarding a vehicle involved in a product

9    liability action. *Id.* at 1324-25. The court held that such information was protected by the work-

10   product doctrine. Specifically, the court stated:

11   [A]ny recollection [the in-house counsel] may have of the
     existence of documents in [her employer]'s possession likely
12   would be limited to those documents she has selected as important
     to her legal theories concerning this case. Thus, contrary to the
13   plaintiffs' argument, the questions asked require more than merely
     acknowledging the existence of certain documents. If [the in-house
14   counsel] were compelled to acknowledge whether specifically
     described documents exist, she necessarily would reveal her
15   mental selective process. [Her] acknowledgment would indicate to
     her opponent that she had reviewed the document and that, since it
16   was important enough to remember, she may be relying on it in
     preparing her client's case. Consequently, we hold that where, as
17   here, the deponent is opposing counsel and opposing counsel has
     engaged in a process of selecting and compiling documents in
18   preparation for litigation, the mere acknowledgment of the
     existence of those documents would reveal counsel's mental
19   impressions, which are protected as work product.

20   *Id.* at 1329.

21   Like in *Shelton*, the information sought by Personal Audio is protected work product. The

22   information that EFF possesses was a direct result of its preparation to file an inter partes review,

23   an adversarial proceeding against Personal Audio. *See* Nazer Decl. ¶ 14. Furthermore, the

24   information was generated by its attorneys and those working at the direction of its attorneys and

25

26   [10] District courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the
27   leading case on attorney depositions. *See, e.g., S.E.C. v. Jasper*, No. C07-06122 JW (HRL), 2009
     WL 1457755 (N.D. Cal. May 26, 2009); *Fausto v. Credigy Servs. Corp.*, No. C07-05658, 2008
28   WL 4793467 (N.D. Cal., Nov. 3, 2008); *Graff v. Hunt & Henriques*, No. C08-0908, 2008 WL
     2854517 (N.D. Cal., July 23, 2008).

1  outside counsel for that petition. Thus the mere identification of information, even if limited to

2  the identification of documents, would implicate the work-product privilege.

3      It appears from conversations with counsel for Personal Audio that Personal Audio does

4  not believe the work product doctrine applies to EFF's preparations in anticipation of filing its

5  petition for inter partes review. Ranieri Decl. ¶ 12. However, Personal Audio is mistaken. The

6  work product doctrine protects materials generated in anticipation of an adversarial proceeding,

7  including those at administrative bodies. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*,

8  268 F.R.D. 114, 117 (D.D.C. 2010) ("In distinguishing between proceedings which qualify as

9  litigation and those that do not, the adversarial nature of the proceeding is characteristic of

10  litigation. The proceeding for which documents are prepared need not actually take place in a

11  court of record, as long as the proceeding is adversarial in nature.") (internal citations and

12  quotations omitted). There is no question that an inter partes (*i.e.* between the parties) review is

13  an adversarial proceeding. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir.

14  2013) (noting that the Congress's purpose in creating inter partes review was to "convert[ ] inter

15  partes reexamination from an examinational to an adjudicative proceeding") (quoting H.R. Rep.

16  No. 112-98, pt. 1, at 46–47 (2011)). To the extent Personal Audio believes responsive testimony

17  does not encompass material generated "in anticipation" of litigation, Personal Audio is also

18  mistaken. *See United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1979) ("'In

19  anticipation' means any time after initiation of the proceeding or such earlier time as the party

20  who normally would initiate the proceeding had tentatively formulated a claim, demand, or

21  charge.").

22      Accordingly, the requests that seek to compel testimony protected by EFF's attorney

23  client privilege or work-product privilege, privileges that EFF has not waived, are improper. *Id.*

24  Personal Audio has not, and cannot, explain—much less prove—how these requests are exempt

25  from the protections afforded to EFF by the attorney-client privilege and the work-product

26

27

28

privilege. Thus the Court must quash the subpoena because it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).[11]

**E.** **Personal Audio's Subpoena improperly calls for unretained expert opinion.**

Several categories of testimony sought by Personal Audio are also improper because they seek "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii).

EFF has no relationship to the claims and defenses in the Texas Case other than by virtue of the fact that it is challenging through the PTO Action the same patent that is asserted in the Texas Case. Nazer Decl. ¶ 22. EFF has no percipient knowledge regarding such things as prior art (Topics 4, 6, 7, and 8) or the '504 patent (Topic 8). Nazer Decl. ¶ 23. EFF's knowledge regarding these topics is based solely on its investigations in anticipation of filing the PTO Action, and its specialized knowledge relating to patents and challenging their validity generally. *Id.* EFF has no knowledge of the prior art or the patent that was derived separate and apart from litigation or its own review of the prior art for forming its invalidity case. Such information is therefore expert testimony and is not discoverable via a third-party subpoena. *See DR Systems, Inc. v. Eastman Kodak Co.*, No. 09cv1625–H, 2009 WL 2982821, at *4 (S.D. Cal. Sept. 14, 2009) (grating a motion to quash a subpoena, holding that the subpoena improperly sought expert testimony, "[b]ecause [the witness] had no involvement with the patents or inventions at issue in this litigation, and his proposed testimony is not based on percipient observations but developed over time using his 'technical' or 'specialized knowledge' and buttressed with additional investigation and research[.]'"); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009) ("the Federal Circuit recently remarked that 'a witness not qualified in the pertinent art' may not testify to 'anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art

---

[11] Personal Audio has limited certain topics, but not all, to "non-privileged" information. However, Personal Audio has *not* limited its topic seeking testimony regarding "*all steps taken* in order for the EFF to be 'fully prepared' to take on Personal Audio with respect to the '504 patent." Nazer Decl. Ex. B at 4 (emphasis added). Thus any limit Personal Audio placed on other topics is merely illusory.

---

Motion to Quash and
Motion for Protective Order

19

Case No. _____

1 references discloses, or whether the asserted claims read on the prior art reference' or

2 'obviousness, or any of the underlying technical questions, such as the nature of the claimed

3 invention, the scope and content of prior art, the differences between the claimed invention and

4 the prior art, or the motivation of one of ordinary skill in the art to combine these references to

5 achieve the claimed invention.'").

6 **IV. CONCLUSION**

7      For the foregoing reasons, EFF requests the Court quash Personal Audio's subpoena in its

8 entirety.

9

Dated: January 29, 2014              Respectfully submitted,

10

11                                 Nicholas A. Brown (SBN 198210)

12                                 brownn@gtlaw.com
Vera Ranieri (SBN 271594)

13                                 ranieriv@gtlaw.com
**GREENBERG TRAURIG, LLP**

14                                 4 Embarcadero Center, Suite 3000

15                                 San Francisco, CA 94111
Telephone: (415) 655-1300

16                                 Facsimile: (415) 707-2010

17                                 Attorneys for Movant

18                                 *Electronic Frontier Foundation*

19

20

21

22

23

24

25

26

27

28