Papool S. Chaudhari (California Bar No. 241346, admitted to this Court)
Papool@ChaudhariLaw.com
CHAUDHARI LAW, PLLC
P.O. Box 1863
Wylie, Texas 75098
Telephone: (214) 702-1150
Facsimile: (214) 705-3775

Attorney for Plaintiff,
**PERSONAL AUDIO, LLC**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| PERSONAL AUDIO, LLC, | ACTION NO. 3:14-mc-80025-RS |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO THIRD PARTY ELECTRONIC FRONTIER FOUNDATION'S MOTION TO QUASH AND FOR PROTECTIVE ORDER** |
| v. | |
| TOGI ENTERTAINMENT, INC. et al. | |
| Defendant. | Date: Wednesday, Mar. 5, 2014 |
| | Time:  1:00 p.m. |
| | Dept.: Courtroom A,15th Floor |
| | Judge: Honorable Nathanael Cousins |

# TABLE OF CONTENTS

1.  INTRODUCTION ....................................................................................1

2.  BACKGROUND FACTS ........................................................................3

3.  ARGUMENTS AND AUTHORITIES ....................................................5

  A.  PERSONAL AUDIO'S SUBPOENA SEEKS INFORMATION HIGHLY
  RELEVANT TO THE TEXAS CASE ......................................................5

    1.  TO WHAT EXTENT THE EFF IS ACTING UNDER THE CONTROL,
    DIRECTION AND/OR INFLUENCE OF ANY DEFENDANT IN THE TEXAS
    CASE IS EXTREMELY RELEVANT ...................................................5

    2.  THE NATURE AND BASIS OF THE EFF'S PRIOR ART ARGUMENTS
    THAT WERE RAISED IN ITS IPR PETITION ARE HIGHLY RELEVANT TO
    THE TEXAS CASE .............................................................................9

  B.  THERE IS NO APPLICABLE FIRST AMENDMENT PRIVILEGE..............10

  C.  THE SUBPOENA DOES NOT REQUIRE DISCLOSURE OF ATTORNEY-
  CLIENT COMMUNICATIONS AND WORK PRODUCT ...................................13

    1.  ATTORNEY-CLIENT PRIVILEGE.................................................13

    2.  ATTORNEY WORK PRODUCT ....................................................16

  D.  THE SUBPOENA DOES NOT REQUIRE DISCLOSURE OF UNRETAINED
  EXPERT OPINION ..............................................................................17

  E.  THE SUBPOENA IS NOT AN "IMPROPER END-RUN AROUND THE
  STRICT DISCOVERY LIMITS THAT APPLY DURING INTER PARTES
  REVIEW" ..........................................................................................18

  F.  THE SUBPOENA DOES NOT SEEK TO USE INFORMATION FOR
  PURPOSES PROHIBITED BY THE PROTECTIVE ORDER IN THE TEXAS
  CASE...................................................................................................19

  G.  THE EFF EGREGIOUSLY ATTEMPTS TO OBSTRUCT DISCOVERY IN
  LITIGATION ON A REGULAR BASIS .................................................20

# TABLE OF AUTHORITIES

**Cases**

*Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 140-141 (N.D. Ill. 1993) ................................................................................................................................. 17

*Anderson v. Hale*, 2001 WL 503045, at *6 (N.D. Ill. May 10, 2001) ...................................... 12

*Chevron Corp v. Donziger*, 3:12-mc-80237-CRB, Document #70, at p. 15 (N.D. Cal. Aug. 22, 2013) (Cousins, M.J.) .......................................................................................................... 2, 12

*Chevron Corp. v. Donziger*, 2013 WL 1402727, at *2-*3 (N.D. Cal. Apr. 5, 2013) (Cousins, M.J.) 11

*Dole v, Service Employees Union*, 950 F.2d 1456, 1459–61 (9th Cir. 1991) ..................................... 13

*DuPlan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974) ............................ 17

*Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 759 (1st Cir. 1994) ......................................................... 6

*Hynix Semiconductor Inv. v. Rambus, Inc.*, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009) (Whyte, J.) ...................................................................................................................... 18

*In re Dayco Corporation Derivative Securities Litigation*, 99 F.R.D. 616, 622 (S.D. Ohio 1983).... 16

*In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447 (6th Cir. 1983) ............................... 15

*In re Guan Inter Partes Reexamination Proceeding*, Control No. 95/001,045, Decision Vacating Filing Date, at 8 (U.S.P.T.O. Aug. 25, 2008) ....................................................................... 7

*In re Horowitz*, 482 F.2d 72, 81 (2nd Cir. 1973), *cert. denied*, 414 U.S. 867 (1973) ................. 15

*In re Lindsey*, 158 F.3d 1263, 1282, (D.C. Cir. 1998) ..................................................................... 15

*In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) ................................................. 15

*In re Rail Freight Fuel surcharge Antitrust Litigation*, 268 F.R.D. 174, 118 (D.D.C. 2010) ............ 16

*Matter of Bevill, Bressler & Schulman Asset Management Corp.*, 805 F.2d 120, 123 (3rd Cir. 1986) ............................................................................................................................ 14

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) ................. 16

*Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992) ...................................... 16

*Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2009) ............................................................ 11, 13

*U.S. v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) ..................................................................... 16

*U.S. v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) ..................................................................... 17

*U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) ....................................................................... 13

*U.S. v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ................................................................... 16

*United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ......................................................... 14

*United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) ........................................................ 15

*United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979), cert. denied, 444 U.S. 833 (1980) ................................................................................................................................... 15

*Weil v. Investment/Indicators, Research & Mgmt, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ........... 14, 15

*Willard v. AT&T Commc'ns of Cal., Inc.*, 204 Cal. App. 4th 53, 62 (Cal. Ct. App. 2012) ........... 2, 12

**Statutes**

35 U.S.C 315(e)(2) ............................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 45(d)(2) ................................................................................................................... 15

**Treatises**

Wright & Miller § 44512 .................................................................................................................. 6

## 1.  INTRODUCTION[1]

Despite the EFF's rhetoric about being a nonprofit digital civil liberties organization, the EFF—in practice—is little more than an organization that seeks to obstruct discovery in intellectual property litigation matters as evidenced by its webpage dedicated to helping people quash subpoenas.  *See* Declaration of Papool S. Chaudhari ("Chaudhari Decl.") at ¶ 12, Exhibit 6.

In this matter, almost immediately after Personal Audio filed its first lawsuits in Texas concerning the '504 patent, the EFF launched a public campaign seeking to invalidate the patent. This culminated in a filing of an *Inter Partes* Review, suspiciously six days after Defendants in the Texas case served their Invalidity Contentions.  It is no surprise that the IPR petition only consists of prior art that was disclosed in these Invalidity Contentions.

In light of the EFF's IPR petition, Personal Audio seeks proper discovery on: (1) to what extent the EFF—in filing an IPR against Personal Audio in the USPTO—is acting under the control, direction and/or influence of any Defendant in the Texas case; and (2) the nature and basis of the EFF's prior art arguments that were raised in its IPR petition.  If any Defendant in the Texas case is or was involved in the IPR, estoppel under 35 U.S.C 315(e)(2) would apply and such Defendant cannot raise invalidity arguments in the Texas case that were or should have been brought in the IPR. As to the prior art arguments, the EFF is seeking, through this collateral attack, to prevent Personal Audio from being able to defend its intellectual property rights.  Meanwhile, the EFF believes it should be immune from having to answer anything in those litigations it seeks to nullify.

---

[1]  This opposition is being timely filed on February 18, 2014.  The motion was filed on January 29, 2014, but as the case was not set up in ECF and no attorney for Personal Audio, LLC had (naturally) made an appearance when the motion was filed, the motion was hand filed and served via e-mail by agreement of the parties pursuant to FRCP 5(b)(2)(E). N.D. Cal. Local Rule 7-3(a) requires that an opposition must be served not more than 14 days after the motion is filed unless the motion was not filed and served via ECF and rather served in an alternative method, such as FRCP 5(b)(2)(E), in which case three additional days are added by the Court per L.R. 7-3(a).  Fourteen days after Wednesday, January 29, 2014 was February 12, 2014.  Three additional days brought the deadline to Saturday, February 15, 2014.  As the following Monday, February 17, 2014, was the Federal Court Holiday of President's Day, this opposition is timely filed on Tuesday, February 18, 2014.

This Court should not let the EFF have its cake and eat it too.  If the EFF wants to attack invalidity of a patent for the sole and stated purpose of ending current and future litigations concerning the same patent, the EFF should be required to give discovery (for use in the district court litigation) as to why they believe the patent is invalid.  The EFF provides no authority (nor has Personal Audio found any) that supports the proposition that a third party who initiates an IPR is somehow immune to discovery in a district court litigation concerning the same patent.

There is also no merit to the EFF's First Amendment Privilege Argument.  *Perry v. Schwarzenegger* does not apply because the EFF cannot make the requisite prima facie showing.  The EFF, in its motion, freely admits that not all donors are members, which this Court has held severely undercuts the First Amendment argument.  *See Chevron Corp v. Donziger*, 3:12-mc-80237-CRB, Document #70, at p. 15 (N.D. Cal. Aug. 22, 2013) (Cousins, M.J.).  Additionally, the EFF's own privacy policy warns donors that their information may be disclosed pursuant to subpoena, which California courts have held rescinds the expectation of privacy.  *See Willard v. AT&T Commc'ns of Cal., Inc.*, 204 Cal. App. 4th 53, 62 (Cal. Ct. App. 2012).  Further, the protective order in the Texas case, using the "Attorneys Eyes Only" designation, would limit the disclosure of information to the attorneys in the case, which the *Perry* court held to be a mitigating factor in determining whether there was a "chilling effect."

The EFF's claims concerning attorney-client privilege, work product doctrine, and unretained expert opinion are unsupported and the EFF provides no information to the Court or Personal Audio to make the determination that such information falls into these categories.

Finally, the subpoena is not an "end-run" around the IPR's discovery limits because the subpoena is for discovery to be used in the Texas case only, and, as the EFF points out, Personal Audio is restricted by a protective order in the Texas case that would only allow it to use this

discovery in the Texas case. Despite Ms. Ranieri's assertions, counsel for Personal Audio Jeremy Pitcock did not state that Personal Audio was going to use this discovery in the IPR. In fact, Jeremy Pitcock and the undersigned are prohibited from having any involvement in the IPR per the same protective order.

As the subpoena calls for information (to be used in the Texas case) that goes to (1) what extent the EFF—in filing an IPR against Personal Audio in the USPTO—is acting under the control, direction and/or influence of any Defendant in the Texas case; and (2) the nature and basis of the EFF's prior art arguments that were raised in its IPR petition, it is a proper subpoena and the Court should require the EFF to promptly comply with the subpoena.

2.   BACKGROUND FACTS

On January 7, 2013, Personal Audio filed patent infringement suits in the Eastern District of Texas (the "Texas case") against Togi Entertainment, Inc.; Ace Broadcasting (then believed to be the parent entity for Adam Carolla's podcasts), and HowStuffWorks alleging infringement of U.S. Patent 8,112,504 ("'504 Patent" or "patent-in-suit"). *See* Civil Action Nos. 2:13-cv-13, 2:13-cv-14, and 2:13-cv-15, all pending in the Eastern District of Texas. The Electronic Frontier Foundation ("EFF") soon after created a webpage on its site called the "Patent Busting Project – An EFF Initiative to Protect Innovation and Free Expression" identifying Personal Audio and the '504 Patent, and accusing Personal Audio of "Crimes Against the Public Domain." *See* Chaudhari Decl. at ¶ 7, Exhibit 1.

In February 2013, before anything of significance occurred in the Texas case, EFF attorney Daniel Nazer—who submitted an affidavit in support of this motion—stated that "[w]e think Personal Audio's podcasting claims are a classic example of an over-broad software patent . . . . But

whether these claims would hold up in court is another question and one that is too early to speculate on." *See id.* at ¶ 8, Exhibit 2.

In April 2013, Personal Audio filed patent infringement suits in the Eastern District of Texas against NBC and CBS alleging infringement of the '504 Patent.  *See* Civil Action Nos. 2:13-cv-270, 2:13-cv-271, both pending in the Eastern District of Texas.  In August 2013, Personal Audio filed a patent infringement suit against FOX alleging infringement of the '504 Patent.  *See* Civil Action No. 2:13-cv-577, pending in the Eastern District of Texas.  This was preceded by FOX filing a declaratory judgment action concerning the '504 Patent is the District of Massachusetts ("Massachusetts case").

In approximately May 2013, the EFF created a fundraising web page called "Save Podcasting—Stop Stupid Patents!" asserting that the patent-in-suit is "bogus" and "overbroad" and that with the money raised, the EFF would "get to work bringing the best case we can straight to the US Patent Office to invalidate the podcasting patent and stop the patent troll Personal Audio from doing more damage to online broadcasters."  *See* Chaudhari Decl. at ¶¶ 9-10, Exhibits 3-4.

In August 2013, the majority of Personal Audio's patent infringement actions in Texas were consolidated for pre-trial purposes.  *See* 2:13-cv-13, Document #12 (E.D. Tex.).  Consolidated Defendants were required to, and did, serve invalidity contentions on October 10, 2013.  *See* Excerpts from Defendants' Invalidity Contentions from 2:13-cv-13 (E.D. Tex.), attached as Exhibit 8 to the Chaudhari Decl.

Six days later—on October 16, 2013—the EFF filed an *Inter Partes* Review ("IPR") in the United States Patent and Trademark Office concerning the '504 Patent.  *See* EFF's IPR petition, attached as Exhibit 9 to the Chaudhari Decl.  Using several prior art references that were disclosed

six days earlier in Defendants' Invalidity Contentions, the EFF contends to the USPTO that the '504 Patent is invalid over this prior art.  *See id.*

On December 20, 2013, counsel for Personal Audio issued a subpoena to the EFF for deposition and listed a small number of topics related to the EFF's contention of invalidity and whether the EFF was acting under the control, direction or influence of any Defendants in the Texas case when it filed the IPR.  *See* Original Subpoena to EFF, attached as Exhibit 10 to the Chaudhari Decl.  As this subpoena was issued from this Court, and not the Eastern District of Texas as required under a recent amendment to the Federal Rules of Civil Procedure, Personal Audio reissued the subpoena on January 17, 2014 for compliance on January 31, 2014.  *See* Reissued Subpoena to EFF, attached as Exhibit 11 to the Chaudhari Decl.   The topics were slightly revised and also the Subpoena was broadened to include Defendants who had recently been consolidated into the Texas case.  *See id.*  Two days before the January 31 deadline for compliance—January 29, 2014—the EFF filed this motion.

3.   ARGUMENTS AND AUTHORITIES

a.   **Personal Audio's subpoena seeks information highly relevant to the Texas Case**

At its core, Personal Audio's deposition topics seek the following discovery in light of the EFF's IPR petition, which it filed a mere six days after Defendants filed their Invalidity Contentions in the Texas case: (1) to what extent the EFF—in filing an IPR against Personal Audio in the USPTO—is acting under the control, direction and/or influence of any Defendant in the Texas case; and (2) the nature and basis of the EFF's prior art arguments that were raised in its IPR petition.

1.   **To what extent the EFF is acting under the control, direction and/or influence of any Defendant in the Texas case is extremely relevant**

All Defendants in the Texas case have raised the affirmative defense of invalidity and nearly all have counterclaimed that the patent-in-suit is invalid.  *See* 2:13-cv-13, Document # 5; 2:13-cv-14, Document # 12; 2:13-cv-15, Document # 10; 2:13-cv-270, Document # 9; 2:13-cv-271, Document # 9; 2:13-cv-577, Document # 9 (Answer only).   However, under Federal statute, "[t]he petitioner in an inter partes review of a claim in a patent … or the real party in interest or privy of the petitioner, may not assert either in a civil action … that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review."   35 U.S.C 315(e)(2) (emphasis added).  Practically speaking, this means if a Defendant in a district court litigation seeks an IPR on the same patent, that Defendant would be foreclosed from making, in the Texas case, the arguments it made or could have made in the IPR.  This prevents Defendants from having two shots in different tribunals at invalidating a patent over prior art, and requires Defendants to be bound by the decision in the IPR.

As to what constitutes a "real party in interest, the USPTO has stated:

> Who constitutes a real party in interest or privy is a highly fact-dependent question, especially on the issue of whether a party who is not a named participant in a given proceeding nonetheless constitutes a "real party in interest" or "privy" to that proceeding.  Courts and commentators agree that there is no "bright-line test" for determining the necessary quantity or degree of participation to qualify as a "real party in interest" or "privy" based on the control concept. *See Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 759 (1st Cir. 1994); *see also* Wright & Miller § 44512 ("The measure of control by a nonparty that justifies preclusion cannot be defined rigidly.").  Accordingly, the Office has not enumerated particular factors regarding a "control" theory of "real party in interest" or "privy" in the proposed rules.  Instead, to resolve a real party in interest or privy dispute that may arise during a proceeding, the Board plans to consider each case on its specific facts.

Statement from BPAI Chief Judge James Donald Smith, Chaudhari Decl. at Exhibit 13.  This alone suggests that the Personal Audio should be able to take sufficient discovery to determine which, if any, Defendants in the Texas case are the real party in interest in this IPR filed by the EFF.

The USPTO has also stated that a petitioner, such as the EFF, in a re-examination or IPR cannot do any of the following without identifying the real party in interest:

"1. Accept payment from another group, pay the requester to file the request for *inter partes* reexamination and have itself named solely as the real party in interest.

2. Obtain money for foundation grants, file a "*quid pro quo*" request for an *inter partes* reexamination where the foundation wants reexamination on a specific patent that the foundation deems anti-competitive and name itself solely as the real party in interest.

3. Allow another entity to direct or control the content (e.g., provide the prior patents/printed publications on which the reexam is to be based) of the request whether such is termed "technical review" or some other phrase."

*In re Guan Inter Partes Reexamination Proceeding*, Control No. 95/001,045, Decision Vacating Filing Date, at 8 (U.S.P.T.O. Aug. 25, 2008).

Thus, to the extent the EFF is or was acting under the control, direction and/or influence of the Defendants in filing the IPR against Personal Audio (or was paid to file an IPR, or filed it on a *quid pro quo* basis), that would also make any such Defendants "the real party in interest" in the IPR. Accordingly, such Defendants would be prohibited from asserting invalidity defenses in the Texas case that were or could have been raised in the IPR. Topics 1 (communications with Defendants Concerning the '504 Patent); 5 (fundraising activities in connection with this IPR Concerning the '504 Patent); and 6 (all steps taken by the EFF to be "fully prepared" to take on Personal Audio with respect to the '504 Patent) are directed to this issue.

In practice, this would have an enormous impact on the Texas case. As the EFF IPR petition could have raised any and all prior art arguments that were raised in Defendants' Invalidity Contentions, if Defendants are "the real party in interest" in the IPR, the effect of 35 U.S.C 315(e)(2) would mean that Defendants' invalidity defenses and counterclaims in the Texas case

based on prior art would *have* to be dismissed because the Defendants in this situation would be bound by the decision in the IPR.  Although this IPR appears to be running concurrently with the Texas case, the nature of the Texas case would be substantially different if Defendants are estopped from arguing invalidity over the prior art in that case.  Essentially, Defendants would have to only defend against the claims in the Texas case on the basis of non-infringement and leave the validity fight to the IPR before the USPTO.  It would affect the likelihood of the case getting to trial and the verdict itself, since the jury would not hear the majority of Defendants' invalidity arguments.  This alone is a compelling the reason the subpoena should not be quashed.

Additionally, even more troubling is that two Defendants thus far—NBC and CBS—are refusing to answer discovery in the Texas case related to their communications with the EFF concerning the '504 Patent. *See* NBC and CBS' Responses to Interrogatory No. 1 in 2:13-cv-13, attached as Exhibit 12 to the Chaudhari Decl.  The EFF, in bringing this motion to quash, raises suspicions that it is hiding this relevant discovery.  The fact that two Defendants are refusing to give discovery on their relevant communications with the EFF raises even more suspicions.  If the EFF was acting without any involvement from Defendants, the EFF should have no issue disclosing this to Personal Audio, nor would any Defendant have issue with disclosing that they had no involvement with the EFF concerning this patent.[2]  While Personal Audio is seeking to resolve its discovery dispute with Defendants in the Texas case, this Court nevertheless should not allow the EFF to get away with not providing Personal Audio the necessary discovery to determine if they have been acting under the control, direction or influence of any Defendant in the Texas case to find out whether, per 35 U.S.C 315(e)(2), any estoppel has been triggered that would necessarily have a major impact on the Texas case.

---

[2]     Indeed Defendants Togi Entertainment, Inc. and HowStuffWorks have stated in discovery that they have had no communications with the EFF concerning the patent-in-suit.

### 2. The nature and basis of the EFF's prior art arguments that were raised in its IPR petition

Personal Audio filed patent infringement suits against several Defendants in the Texas case. Those Defendants claim the patent-in-suit is invalid. Assuming, *arguendo*, that the EFF was not acting under the control, direction or influence of any Defendant, the EFF still inserted itself into this litigation by initiating a collateral attack on the validity of the patent via the USPTO.

Soon after Personal Audio filed its initial round of suits concerning this patent, the EFF had created a "Patent Busting Project" webpage concerning the patent-in-suit accusing Personal Audio of "Crimes against the Public Domain." *See* Chaudhari Decl. at ¶ 7, Exhibit 1. In approximately May 2013, the EFF created a fundraising web page called "Save Podcasting—Stop Stupid Patents!" asserting that the patent-in-suit is "bogus" and "overbroad" and that with the money raised, the EFF would "get to work bringing the best case we can straight to the US Patent Office to invalidate the podcasting patent and stop the patent troll Personal Audio from doing more damage to online broadcasters." *See id.* at ¶¶ 9-10, Exhibits 3-4.

In light of this, Personal Audio should be able to get discovery from the EFF as to the basis for its invalidity assertions. The nature and basis of those assertions are highly relevant to Personal Audio's defense against invalidity claims by the Defendants in the Texas case. As all of the prior art cited in the IPR petition was cited by Defendants six days earlier,[3] Personal Audio should be permitted to inquire directly to the EFF as to how they concluded that those pieces of prior art invalidate the patent and use such information in the Texas case. Topics 7 (identification of any information Concerning any prior art that would tend to show either that the art did not disclose any element of the claims or that the art was not demonstrably available prior to any filing date); 8 (any

---

[3]     *Compare* Chaudhari Decl., Exhibit 8 at p.21 (Geek of the Week), Chart A-1 (p. 43) (Surfpunk), Chart A-5 (p.73) (CBC Radio Article), Chart A-14 (p. 167) and Chart A-15 (p.184) (both Internet CNN Newsroom) *with* Chaudhari Decl., Exhibit 9 at 17-34 (Geek of the Week), 26-35 (Surfpunk), 35-44 (CBC Radio Article), and 45-59 (Internet CNN Newsroom).

non-privileged analysis or Communications concerning the claims, prior art, and meaning or construction of any terms of the claims); 2 (communications between EFF and any actual/potential witness concerning the '504 patent or prior art to same); 3 (communications between the EFF and any third parties specifically Concerning the '504 patent); and 4 (non-privileged communications regarding the prior art cited in any USPTO proceeding Concerning the '504 patent) are designed to elicit this information.

As shown in the webpages directly from the EFF website attached to the Chaudhari Declaration, the EFF raised money to file this IPR in an attempt to invalidate the patent-in-suit, and, thus, "stop the patent troll Personal Audio from doing more damage to online broadcasters." *See* Chaudhari Decl. at Exhibit 4. In other words, the EFF is seeking, through this collateral attack, to prevent Personal Audio from being able to defend its intellectual property rights. Meanwhile, the EFF believes it should be immune from having to answer anything in those litigations it seeks to nullify. This Court should not let the EFF "have its cake, and eat it too." If the EFF wants to attack invalidity of a patent **for the sole and stated purpose of ending current and future district court litigations** concerning the same patent, the EFF should be required to give discovery (for use in the district court litigation) as to why they believe the patent is invalid. The EFF provides no authority (nor has Personal Audio found any) that supports the proposition that a third party who initiates an IPR is somehow immune from discovery in a district court litigation concerning the same patent.

### b. There is no applicable First Amendment Privilege

The EFF's primary basis for seeking this motion to quash is its contention that there is a First Amendment Privilege that applies to the relevant activities and that somehow the EFF can launch a collateral attack on a patent to prevent current and future litigation on that patent, but somehow also be shielded by the First Amendment from providing discovery to the very cases it wishes to put an

end to.  *See* Motion at 8-15.  The EFF heavily relies on *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2009), to support its argument.

Even assuming, *arguendo*, that *Perry* applies, the case: (1) is limited to "private, internal communications regarding formulation of strategy and messages" and "certainly does not apply to documents or messages conveyed to the electorate at large or individual voters for purposes of persuasion, recruitment, or motivation—activities beyond the formulation of strategy and messages"; and (2) is specifically limited to the "core group" of persons engaged in the formulation of campaign strategy and messages.  *Perry*, 591 F.3d at 1165, n.12.  If the EFF is correct, it should be compelled by this Court to identify this "core group" so the Court and Personal Audio can determine if any members of the core group are affiliated in any way with Defendants, so as to ascertain if 35 U.S.C 315(e)(2) estoppel applies to any Defendant in the Texas case.

Nevertheless, there is no applicable First Amendment privilege. A two-part test is used in the Ninth Circuit for analyzing claims of First Amendment associational privilege in discovery disputes. *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1139-41 (9th Cir. 2009).  "This prima facie showing requires [a party] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members 'associational rights.'" *Id.* at 1140.  This prima facie showing "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.* at 1141; *Chevron Corp. v. Donziger*, 2013 WL 1402727, at *2-*3 (N.D. Cal. Apr. 5, 2013) (Cousins, M.J.).

The EFF has not made a prima facie showing of arguable First Amendment infringement. *See Perry*, 591 F.3d at 1139-41.  The EFF admits in its motion that not all of the donors are

"members" of the organization. *See* Motion at 11, Nazer Declaration at ¶16 ("Approximately 50% of these donors [to EFF's Save Podcasting campaign] elected to become members of EFF (or were already members) and approximately 50% individuals supported the campaign without electing to becoming members."). "This significantly undercuts their claim to protection under the First Amendment." *Chevron Corp v. Donziger*, 3:12-mc-80237-CRB, Document #70, at p. 15 (N.D. Cal. Aug. 22, 2013) (Cousins, M.J.); *See Anderson v. Hale*, 2001 WL 503045, at *6 (N.D. Ill. May 10, 2001) (denying motion to quash subpoena seeking identifying information, activity logs, and address books associated with email accounts in part because subpoena did not target religious group exclusively and would implicate others not affiliated with organization).

Moreover, disclosure of personal information pursuant to a subpoena is contemplated in the EFF's own privacy policy and known to potential donors prior to the act of donation. *See* Chaudhari Decl. at ¶ 11, Exhibit 5. The EFF website states the following:

> [W]e may disclose personally identifiable information about you to third parties in limited circumstances, including: (1) with your consent; or (2) <u>when we have a good faith belief it is required by law, such as pursuant to a subpoena or other judicial or administrative order.</u> If we are required by law to disclose the information that you have submitted, we will attempt to provide you with notice (unless we are prohibited) that a request for your information has been made in order to give you an opportunity to object to the disclosure. We will attempt to provide this notice by email, if you have given us an email address, or by postal mail if you have entered a postal address. If you do not challenge . . . .

*Id*. (emphasis added). Compliance with a subpoena, therefore, will not have a chilling effect when potential donors are informed, prior to donation, of this possibility. A warning to potential donors rescinds the expectation of privacy. *See Willard v. AT & T Commc'ns of Cal., Inc.*, 204 Cal. App. 4th 53, 62 (Cal. Ct. App. 2012), *review denied* (Jun. 20, 2012) (California Court of Appeals determined, without deciding "whether the privacy of one's telephone listing is a legally protected privacy interest," that no violation of the right to privacy occurred because "plaintiffs did not expect

privacy in the circumstances, as they knew their listing would be public unless they paid a fee to opt out of being listed.").   In fact, the EFF has not produced a single declaration from any of its members, or potential members, that a limited disclosure will result in this "especially grave threat" described in its motion to quash.  *Perry*, 591 F.3d at 1163 (citing *Dole v, Service Employees Union*, 950 F.2d 1456, 1459–61 (9th Cir. 1991) (holding that the union satisfied its prima facie burden by submitting the declarations of two members who said they would no longer participate in union membership meetings if the disclosure of the minutes of the meetings were permitted)).

Additionally, under the shield of the protective order in Texas Case and using the highest confidentiality designation ("Attorneys Eyes Only"), the only persons that will receive the EFF's donor list or otherwise will be the parties' attorneys.  "A protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement." *Perry*, 591 F.3d at 1160, n.6.  This extremely limited disclosure will not result in harassment, membership withdrawal, and discouragement of new members.  No showing of such has been made by the EFF.

Accordingly, the EFF has not met the prima facie showing set forth in *Perry*.  As the EFF fails to satisfy this test, it cannot claim a First Amendment privilege to resist this discovery.

### c.   The Subpoena does not require disclosure of attorney-client communications and work product

#### 1.   Attorney-Client privilege

The EFF points to Fed. R. Civ. P. 45(d)(3)(A)(iii) as the basis for quashing the subpoena, which states that "… the court for the district where compliance is required must quash or modify a subpoena that … (iii) requires disclosure of privilege or other protected matter, if not exception or waiver applies." The party seeking to claim privilege, however, holds the burden of proof. *See U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Weil v. Investment/Indicators, Research & Mgmt, Inc.*,

647 F.2d 18, 25 (9th Cir. 1981);  *See also Matter of Bevill, Bressler & Schulman Asset Management Corp.*, 805 F.2d 120, 123 (3rd Cir. 1986). *See also United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (the party asserting the discovery privilege has the burden of establishing its existence).

The EFF raises summary objections to Personal Audio's subpoena based, in pertinent part, on specious, summary claims of Attorney Client privilege, work product privilege, and unretained expert opinion. *See* Motion at 15.  The EFF states that topics 1 – 8 are protected by such privileges. *See id.*   The EFF does not articulate any reasons or rationale as to why such communications are privileged, nor does it attempt to identify any specific communications subject to such privileges, including—incredulously—how communications between the EFF and other persons or entities regarding Personal Audio's intellectual property could raise any possible claim of privilege belonging to the EFF.  Rather, the EFF simply raises a blanket claim of attorney-client privilege, work product privilege, and unretained expert opinion.  The one exception and only specific claim of privilege noted in EFF's motion to quash are the communications to counsel at the Cyberlaw Clinic. The other communications sought by Personal Audio's subpoena are grouped wholesale into buckets of privilege claims without any identification or basis for privilege.

These claims of privilege are especially perplexing because there is no legitimate attorney-client privilege or work product privilege the EFF can claim to documents either it did not create, or did create but shared with third parties who do not have aligned interests with the EFF, especially third parties (Topic 3) who are not parties to this litigation or the pending IPR.  The EFF's spurious claims of privilege and the summary manner in which such claims are made demonstrate its fundamental misunderstanding of both the showing necessary to support claims of privilege and protection and the proper scope and breadth of these privileges.

Moreover, summary unsupported claims of privilege without detailed descriptions of the

documents sought and explanations of *how* such documents are privileged, are insufficient to prove privilege and on this basis alone the motion should be denied. The entity seeking protection from production based upon "a claim that it is privileged or subject to protection as trial preparation materials . . . shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed. R. Civ. P. 45(d)(2).  Moreover, as the Advisory Committee Note to Rule 45(d), explains "[Rule 45(d)(2)'s] purpose is to provide a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate such a claim and to resist if it seems unjustified."

Further, third party disclosures automatically waive any claims to attorney-client privilege or work product privilege, unless a joint defense can be established. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012); *Weil*, 647 F.2d at 24; *See also In re Lindsey*, 158 F.3d 1263, 1282, (D.C. Cir. 1998); *United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979), cert. denied, 444 U.S. 833 (1980); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447 (6th Cir. 1983); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *In re Horowitz*, 482 F.2d 72, 81 (2nd Cir. 1973), *cert. denied*, 414 U.S. 867 (1973). As previously demonstrated, because the EFF: (1) is not and will not be a party to Personal Audio's patent infringement suits; (2) does not share identical interests with the Defendants; and (3) does not face the same legal obligations as a Defendant in the patent infringement lawsuit, any communications between the Defendants and the EFF (much less between the EFF and other third parties) are not protected by a joint defense privilege. Thus, EFF cannot freely exchange documents with these third parties and then validly claim privilege for those documents. The general rule is that a "party cannot disclose only those

facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992).

## 2. Attorney Work Product

The EFF asserts that all information sought by topics 1 – 8 in the subpoena are generated in anticipation of litigation and therefore privileged as work product.  *See* Motion at 15.  However, the EFF again does not indicate in any specificity which documents or communications this implicates, when these items were prepared, or the date that such preparation began.  *See In re Rail Freight Fuel surcharge Antitrust Litigation*, 268 F.R.D. 174, 118 (D.D.C. 2010).  The communications requested in topics 1 – 4 do not, in any way, relate to this alleged privilege raised by the EFF. Neither does the fundraising activity requested by topic 5.  Claiming privilege for all items implicated by topics 6 – 8 also appears suspect.  The EFF must show that the "driving force behind the preparation of each requested document" is litigation. *See Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *See generally U.S. v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) (discussing the Work-Product Doctrine).

The EFF also cannot claim for privilege purposes that its interests are aligned with the Defendants and that common interests arise in the Texas litigation and the PTO proceeding. Although validity of the '504 Patent is an issue in both proceedings, this is where the similarities end.  *See U.S. v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (recognizing joint defense privilege as also "from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel"); *In re Dayco Corporation Derivative Securities Litigation*, 99 F.R.D. 616, 622 (S.D. Ohio 1983) (the joint defense privilege is limited to "disclosure of privileged information by an attorney to actual or potential codefendants"); *See also Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.*, 152

F.R.D. 132, 140-141 (N.D. Ill. 1993) ("[A] necessary precondition for the common interest doctrine to apply is that the common interest arise as a result of impending or anticipated litigation").

There is a fundamental difference between being sued for patent infringement and asserting a validity defense/counterclaim and initiating an IPR to seek invalidation of the patent to pursue a public interest.  The Defendants in the Texas case are simply seeking to prevent having to pay money to Personal Audio for a license to the patent-in-suit, while the EFF wants to further its aims to stop "patent trolls" and to "bust patents."  If Personal Audio offered to settle with the Defendants in the Texas case for nominal amounts or simply dismiss the case in exchange for a dismissal of their invalidity claims, those Defendants would likely accept it and drop their validity challenge to the patents.  The EFF, however, has nothing to "settle" with Personal Audio and would likely continue to seek invalidation of the patent to prevent others from becoming potential Defendants in litigation with Personal Audio.  Thus, Defendants and the EFF share no "common interest."

Nevertheless, this argument is inapplicable in this instance where the proceedings are not substantially the same cause in the same litigation.  *See U.S. v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) (to assert joint defense privilege, the attorneys need to be "engaged in maintain substantially the same cause on behalf of other parties in the same litigation");  *Allendale*, 152 F.R.D. at 140 (for the joint defense doctrine to apply, the legal interest must be identical, not similar); *See DuPlan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974).   A potential alignment of interests is also problematic for the EFF and the Defendants, considering the estoppel considerations of 35 U.S.C 315(e)(2).   Accordingly, the EFF's work product claims are without merit.

### d.  The Subpoena does not require disclosure of unretained expert opinion

Even less persuasive is the EFF's assertion that its information regarding the invalidity of the '504 Patent is "expert testimony." *See* Motion at 19.  The EFF may believe in an attempt at puffery

- 17 -

that it is an "expert," but this assertion is conclusory at best.  *See Hynix Semiconductor Inv. v. Rambus, Inc.*, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009) (Whyte, J.) (there are limits to what constitutes "expert" testimony subject to advance disclosure, written reports, *Daubert* gatekeeping, and so on. If there were not, patent litigation would be more astronomically expensive than it already is.").  Topics 6-8 of the Personal Audio subpoena do not rise to the level of "expert" testimony.  All steps taken in order for the EFF to be "fully prepared" to take on Personal Audio is percipient and based on a November 2, 2013 article by NaturalNews (which expressly states that the EFF is now "fully prepared" to take on Personal Audio), *see* Chaudhari Decl. at ¶ 13, Exhibit 7, and does not refer to expert witness testimony.  Likewise, identification of any information, non-privileged analysis, and or communications concerning any alleged prior art of the '504 Patent is also percipient and the EFF has not made any showing that this is expert testimony.  In fact, it is again telling that the EFF has not identified any specific information, communication, or document that would enable this Court to make this determination.  Personal Audio and this Court are left to speculate as to what communications exist and also draw a line between those that rise to the level of expert testimony and those that are based on unqualified fact opinion.  The court in *Hynix* set forth a "three-prong inquiry" to determine if something is considered expert testimony.  *See id.* at *11 (expert testimony, under FRE 702, is required to "(1) be 'based upon sufficient facts or data,' (2) result from 'reliable principles and methods,' and (3) reflect the reliable application of the principles and methods to the facts.").   The EFF does not even attempt to meet this three pronged inquiry and should be required to provided information that is "relevant to any party's claim or defense" or "appears reasonably calculated to lead to the discovery of admissible evidence."  The EFF's unretained expert opinion argument is, thus, also without merit.

### e.   The Subpoena is not an "improper end-run around the strict discovery limits that apply during inter partes review"

The EFF contends that "[s]everal of the Topics, including Topics 3, 4, 6, 7 and 8, are attempts to elicit EFF's litigations positions, and would thus be improper discovery requests during an inter partes review." *See* Motion at 7.  This objection is nonsensical as the discovery sought here is for the Texas case, *not* the IPR.  In fact, as the EFF points out in the Motion, there is a protective order in the Texas case that specifically prevents any discovery in the Texas case being used for another proceeding.  *See* Motion at 8.  Furthermore, outside counsel such as the undersigned and co-counsel Jeremy Pitcock are specifically *prohibited* from having any involvement in the IPR per the same protective order.  *See* Declaration of Jeremy S. Pitcock ("Pitcock Decl.") at ¶ 10; Chaudhari Decl. at ¶ 5.  As has been discussed earlier in this opposition, Personal Audio seeks this discovery for the Texas case, not the IPR.  Thus, the subpoena is not an "end-run" around the discovery limits of the IPR; rather it is to obtain proper discovery from the EFF, an entity who inserted itself into Personal Audio's district court litigations through a collateral attack on validity.

### f.    The Subpoena does not seek to use information for purposes prohibited by the protective order in the Texas case

Personal Audio agrees that the protective order in the Texas case restricts use of discovery obtained in that case for use in the Texas case only.  *See* Motion at 8.  The EFF claims that "counsel for Personal Audio has admitted that it is seeking to depose the EFF in order to use that information in the PTO action . . . [and] may use information from the deposition in the Massachusetts Case." *Id.*  This is wholly untrue.

Counsel for Personal Audio, Jeremy Pitcock, did have a conversation with Ms. Ranieri on December 31, 2013.  *See* Pitcock Decl. at ¶ 6.  Mr. Pitcock explained that Personal Audio sought to take the deposition before certain deadlines in the IPR proceeding and the Massachusetts case.  *See id.* at ¶ 7.  Mr. Pitcock did **not** say that the information was needed for Personal Audio's response to the IPR or in relation to a motion hearing and case management conference in the Massachusetts

case. *See id.* at ¶ 8.  Mr. Pitcock did want to complete the deposition because he believed, in good faith, that the information obtained may very well be useful in the litigation pending in Texas and elsewhere and wanted to take it earlier rather than later, Mr. Pitcock did not believe that the deposition was necessary to either of those proceedings, and, in fact despite the refusal of the EFF to provide a deponent, Personal Audio has had no trouble responding to the various requirements in the multiple proceedings.  *See id.*   Additionally, Exhibit 6 to the Ranieri Affidavit shows all of the correspondence between Mr. Pitcock and Ms. Ranieri, and it shows that the communications were limited to discovery in the Texas case.  *See id.* at ¶ 9.

Again, as discussed above, both the undersigned and Mr. Pitcock are prohibited from having any involvement in the IPR.  Both persons have nothing to do with those proceedings.  Thus, without even getting into the question of whether the EFF has standing to challenge an alleged violation of a protective order to a case it is not a party to, the subpoena does not seek to violate the Protective Order in the Texas case and such accusations are nothing more than a desperate attempt to avoid compliance with a proper subpoena.

### g.  The EFF egregiously attempts to obstruct discovery in litigation on a regular basis

This is not the first time the EFF has attempted to obstruct discovery in litigation.  The EFF routinely seeks to quash subpoenas and help others quash subpoenas.  In fact, the EFF maintains a webpage to guide people in seeking to quash subpoenas.  *See* Chaudhari Decl. at ¶ 12, Exhibit 6. Thus, not only does the EFF seek to obstruct discovery when requests are sent to them, they actively seek to help individuals across the U.S. obstruct discovery where they have no involvement in those cases.  To the extent proper discovery requests are sent to the EFF, as is the case here, the EFF should not be permitted to obstruct discovery as per its usual course of conduct—especially not in this instance where it voluntarily inserted itself into the litigation by launching a collateral attack on

the patent-in-suit, and in seeking to quash the subpoena, does not provide one piece of authority to support the notion that a third party who files an IPR is somehow immune to discovery in district court litigation concerning the same patent.

**CONCLUSION**

For the reasons set forth above, Personal Audio respectfully requests that the motion to quash and motion for protective order be denied in all respects.


Date: February 18, 2014                          Respectfully submitted,

                                                 */s/ Papool S. Chaudhari*

                                                 Attorney for Plaintiff
                                                 PERSONAL AUDIO, LLC

# <u>CERTIFICATE OF SERVICE</u>

I, Papool S. Chaudhari declare as follows:

I am over the age of eighteen years and am not a party to this action. I am a principal of the law firm of Chaudhari Law, PLLC and I am a member of the bar of this Court. I hereby certify that on February 18, 2014, the following document was transmitted via the Court's Electronic Case Filing (ECF) system:

**PLAINTIFF'S OPPOSITION TO THIRD PARTY ELECTRONIC FRONTIER FOUNDATION'S MOTION TO QUASH AND FOR PROTECTIVE ORDER**

I further certify that the attached document was sent on February 18, 2014 via the Court's Electronic Case Filing (ECF) system to all counsel of record in this action.

February 18, 2014                                Respectfully Submitted,

*/s/ Papool S. Chaudhari*

ATTORNEY     FOR     PERSONAL AUDIO, LLC.

- 22 -