Nicholas A. Brown (SBN 198210)
    brownn@gtlaw.com
Vera Ranieri (SBN 271594)
    ranieriv@gtlaw.com
**GREENBERG TRAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

*Counsel for Movant
Electronic Frontier Foundation*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSONAL AUDIO, LLC<br><br>Plaintiff,<br><br>v.<br><br>TOGI ENTERTAINMENT, INC. et al.<br><br>Defendant | Misc. Action No. 3:14-mc-80025-RS<br>[Action pending in the United States District Court for the Eastern District of Texas, Case No. 2:13-cv-13]<br><br>**THIRD PARTY ELECTRONIC FRONTIER FOUNDATION'S REPLY IN SUPPORT OF MOTION TO QUASH AND FOR PROTECTIVE ORDER**<br><br>Date: Wednesday, March 5, 2014<br>Time: 1:00 p.m.<br>Dept.: Courtroom A, 15th Floor<br>Judge: Honorable Nathanael Cousins |

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Personal Audio Seeks EFF's Work Product Without Justification ..................................... 2

    A. The Testimony Personal Audio Seeks is Work Product ........................................... 2

    B. Personal Audio Cannot Show Burden or Hardship .................................................. 4

        i. Personal Audio's Arguments As to Why it Needs EFF's Testimony Do Not Remove Work Product Protection ............................................................. 5

        ii. Personal Audio Misstates the Law as to Waiver of Work Product Protection .................................................................................................... 7

        iii. Personal Audio's Requests Are Also Improper Demands For Unretained Expert Testimony. ................................................................................... 8

III. Personal Audio Cannot Overcome EFF's First Amendment Privilege .............................. 9

    A. The First Amendment Protects the Associational Rights of EFF's Members, Donors, and Supporters ........................................................................... 9

    B. Personal Audio Cannot Satisfy the Enhanced Relevance Standard Needed to Overcome First Amendment Privilege. ............................................................. 12

IV. Conclusion .................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Cases**

*BASF Aktiengesellschaft v. Reilly Indust., Inc.*,
  224 F.R.D. 438 (S.D. Ind. 2004) .................................................................................................. 7

*Beinin v. Ctr. for Study of Popular Culture*,
  C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007) ..................................... 10, 11

*Bigelow v. Old Dominion Copper Mining & Smelting Co.*,
  225 U.S. 111 (1912) ................................................................................................................... 12

*Dole v. Serv. Employees Union, AFL-CIO, Local 280*,
  950 F.2d 1456 (9th Cir. 1991) ................................................................................................. 10

*Dunnet Bay Const. Co. v. Hannig*,
  10-CV-3051, 2011 WL 5417123 (C.D. Ill. Nov. 9, 2011) ................................................... 10

*Eilers v. Palmer*,
  575 F. Supp. 1259 (D. Minn. 1984) ................................................................................. 10, 11

*Elec. Frontier Found. v. Central Intelligence Agency*,
  C 09-3351 SBA, 2013 WL 5443048 (N.D. Cal. Sept. 30, 2013) .......................................... 9

*Elec. Frontier Found. v. Dep't of Commerce*,
  C12-3683 TEH, 2013 WL 3730096 (N.D. Cal. July 12, 2013) ............................................ 9

*Goff v. Harrah's Operating Co., Inc.*,
  240 F.R.D. 659 (D. Nev. 2007) ................................................................................................ 7

*Graff v. Hunt & Henriques*,
  No. C 08-09-08 JF (PVT), 2008 WL 2854517 (N.D. Cal. July 23, 2008) ............................ 6

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ............................................................................................................ *passim*

*Hy-Lo Unit & Metal Products Co. v. Remote Control Mfg. Co.*,
  83 F.2d 345 (9th Cir. 1936) ..................................................................................................... 12

*Hynix Semiconductor Inc. v. Rambus Inc.*, C-00-20905 RMW, 2009 WL 230039 (N.D.
  Cal. Jan. 27, 2009) ...................................................................................................................... 8

*In re Heartland Inst.*,
  11 C 2240, 2011 WL 1839482 (N.D. Ill. May 13, 2011) ............................................... 10, 13

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ................................................................................................ 7

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locals
  1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*,
  590 F.2d 1139 (D.C. Cir. 1978) .................................................................................. 9, 12, 13

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ................................................................................................ 5

*NAACP v. Button*, 371 U.S. 415 (1963) ................................................................................... 10

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ........................................................................... 1, 10, 11, 12

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ................................................................................ 3, 4, 5, 8

*UMG Recordings, Inc. v. Shelter Capital Partners*,
    718 F.3d 1006 (9th Cir. 2013) ............................................................................................ 9

*Willard v. AT & T Commc'ns of Cal., Inc.*,
    204 Cal. App. 4th 53 (2012) ............................................................................................. 11

*Wyoming v. U.S. Dept. of Ag.*,
    208 F.R.D. 449 (D.D.C. 2002) ......................................................................................... 12

**Statutes**

35 U.S.C. § 311 *et seq.* ................................................................................................................ 7

35 U.S.C. § 315(e)(2) .................................................................................................................. 5

**Other Authorities**

U.S. Patent and Trademark Office, *Patent Trial Practice Guide*, 77 FR 48756-01 (August
    14, 2012) .......................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 45(d)(3)(A)(iii) .................................................................................................... 4

Fed. R. Civ. P. 45(d)(3)(B)(ii). .................................................................................................... 8

# I. INTRODUCTION

Personal Audio has not and cannot overcome the numerous privileges sheltering the information it seeks. It has no legal support for its effort to invade the attorney work product protections that apply to "the nature and basis of EFF's prior art arguments;" indeed, its position is contrary to long-standing authority. *See Hickman v. Taylor*, 329 U.S. 495 (1947). And it has neither met the heightened standard for relevance required to overcome the First Amendment protections afforded to EFF, its donors, and its members, nor made reasonable attempts to obtain the information it wants without impinging on those protections. Indeed, if the court accepts Personal Audio's claim that it is only interested in finding out whether any of the named Texas Case defendants donated to EFF, Personal Audio can and should direct its discovery *to those defendants*, as the First Amendment requires. There is no need to seek the information from a third party via an overly broad and burdensome subpoena.

Perhaps aware that it cannot comply with the Constitution, Personal Audio attempts to claim the First Amendment does not apply. As explained below, however, Personal Audio's theories run directly contrary to black-letter law. Equally uncompelling is Personal Audio's suggestion that EFF's privacy policy waives the First Amendment privilege protecting the associational rights of EFF's members and supporters. By stating that it might make disclosures pursuant to a *lawful* subpoena, EFF does not give up the right to challenge whether a subpoena is lawful in the first place. Thus, it remains Personal Audio's burden to establish the heightened relevance necessary to overcome the First Amendment privilege. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). Personal Audio has not met that burden, and that should end the matter.

Personal Audio's overarching contention appears to be that any entity that chooses to file an inter partes review challenging a patent is necessarily "inserting itself" into any district court litigation involving the same patent and inviting a subpoena about any number of topics, including the basis for its position on invalidity and any and all information it received in preparation for litigation.

Personal Audio is wrong. EFF is neither a party the Texas Case nor a percipient witness and its subjective beliefs about the patent have no relevance there. If Personal Audio's argument were accepted, any organization filed a request for inter partes review could be haled into independent district court litigation for virtually unlimited discovery about its attorneys' views about validity and the prior art. But as EFF explained in its opening brief, this would eviscerate any limitation on discovery into protected material and would abrogate Congress's attempts to make inter partes review a cost-effective alternative to litigation.

Rather than addressing, much less dispelling, the concerns EFF has raised, Personal Audio's response confirms them. The subpoena should be quashed in its entirety.

## II. PERSONAL AUDIO SEEKS EFF'S WORK PRODUCT WITHOUT JUSTIFICATION

### A. The Testimony Personal Audio Seeks is Work Product

Personal Audio argues that it is entitled to depose EFF about the "the nature and basis of EFF's prior art arguments" because "the nature and basis of those assertions are highly relevant … ." Personal Audio's Opposition to EFF's Motion to Quash ("Opp.") at 9. Personal Audio's attempt to overcome that protection appears to be based on a fundamental misunderstanding of the law. The information it seeks exactly the same type of information that courts have long protected as work product, regardless of its relevance.

The foundational case on the question is *Hickman v. Taylor*, 329 U.S. 495 (1947). In that case, one party sought "oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation", arguing that it was entitled to "discover the true facts and compel their disclosure wherever they may be found." *Id.* at 497, 506. The Supreme Court disagreed, holding that a party seeking such material must show hardship or injustice. *Id.* at 509. That is because "no legitimate purpose is served" by "forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary." *Id.* at 512-13. To do otherwise would "contravene the public policy underlying the orderly prosecution and defense of legal claims" and "not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id.* at 510.

Closely on point is *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). There Shelton sought a deposition from American Motors Corporation regarding the existence or non-existence of documents. *Id.* at 1325. The Rule 30(b)(6) witness refused to answer, stating that "any information I have concerning documents which might possibly be responsive to your question, I've acquired solely through my capacity as an attorney for American Motors in my efforts to find information which would assist me in defending the company in litigation, and therefore I decline to respond to the question." *Id.* The Eighth Circuit agreed with the objection, stating that "where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, *the mere acknowledgment of the existence* of those documents would reveal counsel's mental impressions, which are protected as work product." *Id.* at 1326 (emphasis added).

The material sought by Personal Audio is no different than that found to be protected in these cases. Topics 1-4, in contradiction to *Hickman*, seek to have EFF testify as to its recollection and mental impressions as to the oral and written statements of witnesses, that were secured by EFF's counsel, EFF's in-house counsel, or by others at EFF at the direction of EFF's counsel, in the course of preparation for possible litigation. *See* Declaration of Daniel Nazer ("Nazer Decl."), ECF No. 2-2, Ex. B ("Subpoena"), at 3-4 (seeking: via Topic 1, EFF's recollections of all communications between EFF and "any person or entity that has received a licensing letter from Personal Audio"; via Topic 2, EFF's recollections of all communications with "any actual or potential witness"; via Topic 3, EFF's recollections of all communications with "any third parties specifically concerning the '504 patent"; via Topic 4, EFF's recollections of communications "regarding prior art cited in any proceedings in the Patent and Trademark Office concerning the '504 patent"); *see also* Nazer Decl. at ¶ 14 (explaining that documents created by EFF were created in anticipation of adversarial proceedings and reflect legal analysis).

Topics 5-8, in direct contradiction to *Shelton*, seek to have EFF testify as to its recollection and mental impressions as to what material its attorneys reviewed and examined in preparation for its challenge to Personal Audio's patent. *See id.* at 4 (seeking: via Topic 5, EFF's recollections of "[a]ll fundraising activities", which includes EFF's analyses of the laws

regarding fundraising; via Topic 6, EFF's recollections of "all steps taken for the EFF to be 'fully prepared' to take on Personal Audio"; via Topic 7, EFF's recollections of "any information concerning any prior art[.]"; via Topic 8, EFF's recollections of "analysis or communications concerning … (1) the claims of the '504 patent; (2) any prior art to the '504 patent; and (3) the meaning or construction of any of the terms in the claims of the '504 patent.").

Personal Audio states that it "should be permitted to inquire directly to the EFF as to how they concluded that those pieces of prior art invalidate the patent and use such information in the Texas case." Opp. at 9. But Personal Audio provides no argument as to why, consistent with *Hickman* and *Shelton*, the material it seeks is not work product. *See* Opp. at 16 (stating, without argument, that "the communications requested in topics 1-4 do not, in any way, relate to this alleged privilege….neither does the fundraising activity requested by topic 5 [and] claiming privilege for all items implicated by topics 6-8 also appears suspect").

As *Hickman* and *Shelton* make clear, relevance alone is not enough. It "is not because the subject matter is privileged or irrelevant" that Personal Audio cannot depose EFF, it is that it "is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel….[a]s such, it falls outside the arena of discovery[.]" *Hickman*, 329 U.S. at 509-10.[1] Thus, absent a showing of injustice or hardship, the material is simply not discoverable.

**B.    Personal Audio Cannot Show Burden or Hardship**

As discussed in *Shelton*, once the work-product protection has been established, attorney depositions should be permitted only where the party seeking the deposition shows that "(1) no other means exist to obtain the information; (2) the information sought is relevant and

---

[1] To be clear, EFF continues to maintain its position that the testimony sought also includes testimony that is protected by the attorney-client privilege, which provides a separate reason why the subpoena should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). As the most blatant example, the Subpoena purports to require EFF to testify as to "all steps taken", ***without exception*** for privileged material, "in order for the EFF to be 'fully prepared' to take on Personal Audio with respect to the '504 patent." Subpoena, Nazer Decl. Ex. B, at 4. Unquestionably, this includes EFF's conversations with counsel. Given the breadth of Personal Audio's request, EFF has sufficiently raised the privilege and described its nature.

nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (internal citation omitted). Personal Audio has not made this showing. Instead, Personal Audio makes a half-hearted attempt to show that a small portion of the information it seeks is otherwise unavailable, ignores the other requirements of *Shelton*, and argues that EFF has waived the protection. But even with respect to these arguments, Personal Audio's positions fail.

      i.  **Personal Audio's Arguments As to Why it Needs EFF's Testimony Do Not Remove Work Product Protection**

Personal Audio states it needs EFF's testimony in order to determine whether estoppel applies to the defendants in the Texas Case. Opp. at 5-8. Indeed, Personal Audio insists that the information it seeks will *only* be used in the Texas Case. Opp. at 19-20.

Accepting the truth of this assertion for this Reply,[2] the only possible relevance of this information to the Texas Case is whether the **named Texas Case** defendants are estopped if EFF's petition is granted.[3] Personal Audio has provided no reason why it needs testimony regarding *each and every* donor to EFF's fundraising campaign or EFF's communications with each and every *possible* party Personal Audio may sue. *See* Subpoena, Nazer Decl. Ex. B, at 3-4, Topic 5 (seeking testimony as to "the names of all Persons who donated or contributed"); Topic 1 (seeking testimony as to EFF's communications with "Defendants", where "Defendants" includes "any potential or actual Defendant in any civil case"); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (finding nonparty subpoenas oppressive

---

[2] Personal Audio's claim that it is only seeking testimony for use in the Texas Case is inconsistent with both the breadth of the testimony it seeks from EFF and by Personal Audio's own statements in opposition. For example, Topic 1 seeks testimony regarding communications with "*any potential or actual Defendant[] in any civil case*…. includ[ing]…*any person or entity that has received a licensing letter from Personal Audio*" (emphasis added). Subpoena, Nazer Decl. Ex. B, at 1 (definition of "Defendants") & 3 (Topic 1 seeking all communications with "Defendants"). Furthermore, Personal Audio states that it wanted to depose EFF before certain deadlines because it thought "the information obtained may very well be useful in the litigation pending in Texas *and elsewhere*." Opp. at 20 (emphasis added).
[3] The estoppel provisions of 35 U.S.C. § 315(e)(2) apply *only* if a petition is granted. *Id.* (for estoppel to apply, a "final written decision" must issue from an *instituted* inter partes review). Thus Personal Audio's argument is also premature: the petition has not been granted and no estoppel applies in any event against *any* party, including the Texas Case defendants.

| EFF's Reply re Motion to Quash and Motion for Protective Order | 5 | Misc. No. 3:14-mc-80025-RS |
|---|---|---|

because "[n]o attempt had been made to try to tailor the information request to the immediate needs of the case") (citation omitted).

And Personal Audio *admits* that other means exist to obtain the information it seeks. Personal Audio states that "two Defendants are refusing to give discovery on their relevant communications with the EFF". Opp. at 8. But Personal Audio concedes that it is "seeking to resolve its discovery dispute with Defendants in the Texas Case … ." *Id.* Given the important countervailing privileges at stake, that is a more appropriate discovery avenue. *See Graff v. Hunt & Henriques*, No. C 08-09-08 JF (PVT), 2008 WL 2854517, at *2 (N.D. Cal. July 23, 2008) (quashing a subpoena because issuing party "failed to identify any relevant information which they can only obtain by deposing [] counsel"); *see also* Part III.B, *infra* (discussing the need to show information is not available from elsewhere, especially where First Amendment associational rights are implicated). Personal Audio should exhaust all avenues of seeking that information *from those parties*, before burdening a third party such as EFF, especially in light of the work product and First Amendment concerns. *See* Section II.A, *supra*, and Section III, *infra*, respectively.

Personal Audio also argues that "if the EFF wants to attack invalidity [sic] of a patent for the sole and stated purpose of ending current and future district court litigations concerning the same patent, the EFF should be required to give discovery…as to why they believe the patent is invalid." Opp. at 10 (emphasis omitted). But *every* challenger of a patent in an inter partes review is attempting to "end[] current and future district court litigations concerning the same patent." Despite this, the PTO has never required a challenger to give testimony "as to why [the petitioner] believes a given patent to be invalid." *See* EFF's Motion to Quash, ECF No. 1, at 6-8 (discussing the limitations on discovery during an inter partes review). Personal Audio provides no reason why it should be treated differently, other than the fact that it has concurrent litigation. Personal Audio's argument that EFF has somehow "injected" itself into the Texas Case is inaccurate and irrelevant. EFF has exercised its right, pursuant to the recently enacted America

Invents Act, to challenge Personal Audio's patent.[4] In doing so, EFF is afforded all the normal and usual protections given to an adverse party regarding its work product.

### ii. Personal Audio Misstates the Law as to Waiver of Work Product Protection

Unable to overcome the work-product hurdle, Personal Audio finally insists it doesn't have to because EFF has (somehow) waived the protection. Opp. at 16. This, too, is based on a misunderstanding of the law, specifically a willful conflation of attorney-client and work-product privileges. Personal Audio's waiver theory is based entirely on attorney-client cases.[5] *See* Opp. at 15 (citing cases discussing the waiver of attorney-client privilege only, and not the waiver of work product protection). But "[t]he work product rule is not based on the confidentiality of the attorney-client relationship, and it does not disappear when the balloon wall of confidentiality is breached unless the breach has substantially increased the opportunities for potential adversaries to obtain the information." *Goff v. Harrah's Operating Co., Inc.*, 240 F.R.D. 659, 661 (D. Nev. 2007) (quotation omitted).[6]

EFF has not shared any work product information with any party wherein that disclosure would increase the opportunity that Personal Audio would learn of it, and therefore has not waived any protection. *See BASF Aktiengesellschaft v. Reilly Indust., Inc.*, 224 F.R.D. 438, 443 & n.4 (S.D. Ind. 2004) (rejecting the argument that a party accused of infringement waived work product protection by discussing invalidity of the patent with a non-party customer, stating that

---

[4] Personal Audio complains that EFF has launched a "collateral attack" to "prevent Personal Audio from being able to defend its intellectual property rights." Opp. at 1. Personal Audio's quarrel here is with Congress, not EFF. Congress created the inter partes review procedure and made it available to public interest groups like EFF. *See* 35 U.S.C. § 311 *et seq.* There is nothing inappropriate about EFF using this procedure; rather, it is precisely what Congress intended.

[5] The only case Personal Audio cites regarding waiver which mentions the work product protection is *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998). However, the court in *Lindsey* declined to address the work product protection as the court "fail[ed] to see how the question of the President's personal work product privilege was raised by the questions asked[.]" *Id.* at 1282 n.15.

[6] Indeed, if Personal Audio's theory were correct, the result in *Hickman* could never have been achieved. That is, if disclosure of any information to a third-party immediately waived work product protection, the Supreme Court could not have found that an attorneys' notes and thoughts regarding its interviews with witnesses were protected by the work product doctrine.

"because [Defendant's] letter … did not substantially increase the opportunities for [the patentee] to obtain the disclosed information … work product protection was not waived, [and] the Court need not determine whether the common interest doctrine applies."). Furthermore, even if this were not the case, this does not change the fact that Personal Audio is seeking to compel EFF to provide *testimony* as to what it recalls as important, and such testimony is protected even if documents are not. *Cf. Shelton*, 805 F.2d at 1326-28 (testimony of an attorney regarding the existence of documents is work product, even if the underlying documents are not protected). Thus the material Personal Audio seeks remains protected.

### iii. Personal Audio's Requests Are Also Improper Demands For Unretained Expert Testimony.

Personal Audio also misunderstands EFF's arguments regarding expert testimony. Personal Audio suggests that EFF would not qualify as an expert under the *Daubert* standard. Opp. at 17-18. This completely misses the point. EFF does **not** claim that it would be able to testify in the Texas Case as an expert on prior art, claim construction, or infringement. Rather, it is that requesting testimony on those topics from *any* nonparty who is not a percipient witness amounts to a request for *expert testimony*. *See Hynix Semiconductor Inc. v. Rambus Inc.*, C-00-20905 RMW, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009) (explaining that "a witness not qualified in the pertinent art *may not testify* to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art reference discloses, or whether the asserted claims read on the prior art reference or obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of the prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention.") (emphasis added). Thus, EFF's testimony on these subjects, if it were relevant at all, could only be *expert testimony*, and is also protected from disclosure by Federal Rule of Civil Procedure 45(d)(3)(B)(ii).

Simply put, Personal Audio seeks the pierce the work product privilege in order to obtain testimony that cannot in any event be used in the Texas Case. This Court should not allow it.

### III. PERSONAL AUDIO CANNOT OVERCOME EFF'S FIRST AMENDMENT PRIVILEGE

#### A. The First Amendment Protects the Associational Rights of EFF's Members, Donors, and Supporters.

Personal Audio presents three separate challenges to EFF's assertion of First Amendment privilege. It claims that: (1) EFF is only entitled to assert the associational rights of formal members; (2) EFF failed to make an adequate prima facie showing of associational harm; and (3) EFF's published privacy policy somehow rescinded any expectation of donor privacy. *See* Opp. at 10-13. None of these arguments has any merit.

First, there is no question that EFF may assert the First Amendment rights of those that chose to associate with it. EFF is a nonprofit digital civil liberties and legal aid organization. Nazer Decl. at ¶¶ 6-7; *see also Elec. Frontier Found. v. Dep't of Commerce*, C12-3683 TEH, 2013 WL 3730096, at *1 (N.D. Cal. July 12, 2013) ("EFF is a not-for-profit organization that informs policymakers and the general public about technology-related civil liberties issues and defends those liberties."). It engages in a wide variety of free speech and associational activities, including public advocacy, litigation, and submissions to regulatory agencies. Nazer Decl. at ¶¶ 8-11, 17-18; *see also UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F.3d 1006, 1018 (9th Cir. 2013) (citing EFF amicus brief); *Elec. Frontier Found. v. Central Intelligence Agency*, C 09-3351 SBA, 2013 WL 5443048, at *1 (N.D. Cal. Sept. 30, 2013); U.S. Patent and Trademark Office, *Resources and Glossary*, available at http://www.uspto.gov/patents/litigation/Resources.jsp (listing EFF as a "resource" that provides "legal services and referrals, through a 'Cooperating Attorney' list"). EFF may assert the First Amendment rights of those who chose to associate with it as *members, donors, or supporters*. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locals 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) (hereafter "*Nat'l Right to Work*") ("Without doubt, the association itself may assert the right of its *members and contributors* to withhold their connection with the association.") (emphasis added).

Indeed, courts have consistently found that the First Amendment protection of the right of association is not limited to formal members. *See, e.g.*, *In re Heartland Inst.*, 11 C 2240, 2011

WL 1839482, at *2 (N.D. Ill. May 13, 2011) ("The Courts have recognized that there is a right to free association, which is implicated when an organization is compelled to disclose its list of *members or donors*, thereby causing a chilling effect on the organization.") (emphasis added); *Beinin v. Ctr. for Study of Popular Culture*, C 06-02298 JW, 2007 WL 1795693, at *2-3 (N.D. Cal. June 20, 2007) (recognizing associational rights of individuals supporting professor's lawsuit). Moreover, "support of litigation is a form of expression and association protected by the First Amendment." *Beinin*, 2007 WL 1795693, at *3 (citing *NAACP v. Button*, 371 U.S. 415, 428-29 (1963)); *see also Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn. 1984).

Second, EFF has offered ample evidence to establish a prima facie case of associational harm. Specifically, EFF submitted a declaration from Staff Attorney Daniel Nazer. This declaration explained that disclosure of donor information would chill EFF's ability to fundraise and that disclosure of its internal communications would chill its ability to frankly develop its strategy and message. *See* Nazer Decl. at ¶¶ 18-19, 25-28. This is precisely the kind of evidence courts have found sufficient to establish a prima facie case. *See, e.g.*, *Dunnet Bay Const. Co. v. Hannig*, 10-CV-3051, 2011 WL 5417123, at *6 (C.D. Ill. Nov. 9, 2011) ("Declarations from staff setting forth the impact of disclosure on their future behavior are sufficient to meet this burden.") (citing *Perry*, 591 F.3d at 1163 and *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1458–60 (9th Cir. 1991)).

Third, contrary to Personal Audio's strained reading, EFF's privacy policy does not abrogate the associational rights of its members and supporters. EFF is an organization devoted to promoting online privacy. *See* Nazer Decl. at ¶¶ 7, 18. Consistent with this aspect of its mission, EFF has published a detailed privacy policy that explains how and when it might disclose information in its possession. *See* EFF Privacy Policy, available at https://www.eff.org/policy. As Personal Audio points out, this policy includes language stating that EFF may disclose information "pursuant to a subpoena" when "*required by law*." *Id.* (emphasis added). Personal Audio argues that this policy thereby "rescinds the expectation of privacy" of EFF's donors. Opp. at 12.

Nonsense. The fact that EFF might disclose information pursuant to a *lawful* subpoena does not somehow deprive it of the right to contest whether a subpoena is proper in the first instance. Indeed, EFF's privacy policy states that it will "independently object to requests for access to information about users of our site that we believe to be improper." Decl. of Papool S. Chaudhari, ECF No. 8-1, Ex. 5 at 3. If Personal Audio's argument were accepted, it would have the perverse result of discouraging organizations from informing the public about the possibility of disclosures pursuant to a subpoena.[7] Not surprisingly, Personal Audio was unable to find a legal basis for its position, and therefore relies exclusively on *Willard v. AT & T Commc'ns of Cal., Inc.*, 204 Cal. App. 4th 53 (2012). But that case did not involve membership lists, donations, First Amendment privilege, associational rights, or even a subpoena. Instead, it considered whether AT&T's charges for an unlisted phone service were excessive in light of the privacy interest involved. *See id.* at 61-62. The case provides no support whatsoever Personal Audio's misguided theory.

Finally, it should be noted that the possibility of disclosure pursuant to a protective order does not abrogate the First Amendment privilege. Protective orders are an option in every federal case and if they were sufficient to overcome the First Amendment privilege then the privilege would have no weight. *See Perry*, 591 F.3d at 1160 n.6 (9th Cir. 2010) ("The mere assurance that private information will be narrowly rather than broadly disseminated, however, is not dispositive.") When individuals are associating for the purpose of supporting litigation (or, in this case, an adversarial administrative proceeding), there is a clear risk of association harm in disclosure of their identities to the defendant in that litigation. *See Beinin*, 2007 WL 1795693, at *3; *Eilers*, 575 F. Supp. at 1261.

---

[7] Privacy policies, including those of major medical providers, routinely warn about the possibility of disclosure pursuant to a subpoena. *See, e.g.*, Kaiser Permanente Privacy Statement, available at http://kaiserpermanente.org/kpweb/privacystate/entrypage.do ("We may disclose personal information when required to do so by a subpoena, court order, or search warrant."). A holding that such a policy "rescinds the expectation of privacy" would therefore abrogate the privacy rights of millions of people.

B. **Personal Audio Cannot Satisfy the Enhanced Relevance Standard Needed to Overcome First Amendment Privilege.**

Personal Audio never explains how it can surmount the heightened relevance standard needed to overcome First Amendment privilege. Personal Audio insists it is entitled to deposition testimony from EFF as to "why they believe the patent is invalid." Opp. at 2. But even if non-party EFF's state of mind regarding validity was somehow relevant to the Texas Case, it is certainly is not "highly relevant" as required by *Perry*. 591 F.3d at 1161; *see also Wyoming v. U.S. Dept. of Ag.*, 208 F.R.D. 449, 455 (D.D.C. 2002) (party seeking discovery must show information sought goes to the "heart of the lawsuit"). Indeed, far from being central to the Texas Case, the testimony of a non-party (who is not a percipient witness) regarding validity is of minimal relevance at best. *See* Part II.B.ii. & II.B.iii., *supra*.

Personal Audio now admits that any discovery taken in the Texas Case may only be used in that proceeding. So the only *conceivably* relevant issue it offers is whether the defendants in the Texas case are exerting control over EFF's petition for inter partes review such that they might held, consistent with long-standing principles of collateral estoppel, to be in privity with EFF. *See* U.S. Patent and Trademark Office, *Patent Trial Practice Guide*, 77 FR 48756-01 at 48759 (August 14, 2012) (privity concerns "whether the non-party exercised or could have exercised control over a party's participation in a proceeding"); *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111 (1912); *Hy-Lo Unit & Metal Products Co. v. Remote Control Mfg. Co.*, 83 F.2d 345, 350 (9th Cir. 1936). As explained above, however, Personal Audio has not shown that it has "made reasonable attempts to obtain the information elsewhere." *Nat'l Right to Work*, 590 F.2d at 1152. Whether any of the defendants in the Texas Case donated to EFF's Save Podcasting campaign, and any communications between the defendants and EFF, is discoverable *from the defendants in the Texas Case*. Personal Audio simply does not need discovery from EFF on this issue.

Personal Audio complains that some defendants in the Texas Case have raised objections to certain of its discovery request. But it has made no showing that it has exhausted other means of gaining the information covered by its Subpoena. Faced with an identical argument, one district court explained:

> Plaintiffs contend that they are attempting to discover information from Third Parties through subpoenas because Syngenta has not responded to Plaintiffs' requests to produce the same information that Plaintiffs made in the underlying action … . However, the court in the underlying action … is vested with the authority to decide whether the requested information, in the first instance, is discoverable from Syngenta. … [B]y their own admissions, Plaintiffs have not shown that they have fully exhausted other reasonable sources of gaining the information sought in the subpoenas. … Plaintiffs' attempt to obtain the information from Third Parties is not the least intrusive means of obtaining such information and borders on harassment.

*In re Heartland Inst.*, 2011 WL 1839482, at *4. Similarly, Personal Audio has not shown that it has exhausted alternative, less intrusive, means of discovering the information sought by its subpoena. *See Nat'l Right to Work*, 590 F.2d at 1153 ("The unions should have been required to attempt to seek information from other likely and reasonably accessible sources before the Foundation was compelled to disclose the names of contributors.").

Indeed, Personal Audio hasn't even attempted to respect the associational rights at stake by limiting its intrusive discovery to information that might conceivably relevant. Personal Audio seeks information regarding each of the over one thousand individuals who donated to EFF's Save Podcasting campaign. *See* Nazer Decl. at ¶ 16. But, taking it at its word, Personal Audio is only seeking evidence for use in the Texas Case against the defendants in that consolidated proceeding. Given this concession, there is no conceivable justification for the extraordinarily broad nature of its demands. *See* Subpoena, Nazer Decl. Ex. B, at 1 (defining 'Defendant' as "*any potential* or actual Defendants in *any civil case* regarding the '504 patent") (emphasis added). Simply put, Personal Audio is seeking to invade the associational privacy of hundreds of people, to little evident purpose.

Its subpoena amounts to harassment and must be quashed.

## IV.     CONCLUSION

For the foregoing reasons, and for the reasons discussed in EFF's moving papers, EFF requests the Court quash Personal Audio's subpoena in its entirety, and grant EFF a protective order.

/

/

| | | |
|---|---|---|
| 1 | Dated: February 25, 2014 | Respectfully submitted, |

     /s/ Nicholas A. Brown
Nicholas A. Brown (SBN 198210)
  brownn@gtlaw.com
Vera Ranieri (SBN 271594)
  ranieriv@gtlaw.com
**GREENBERG TAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

Attorneys for Movant
*Electronic Frontier Foundation*